179 Wis.2d 114 (1993)
507 N.W.2d 94
IN RE the INTEREST OF BRANDON S. S., A person under the age of 18:
DAVID S. and Geraldine S., Appellants,[]
BRANDON S. S., Co-Appellant,
v.
LAURA S. and Michael R., Respondents.
No. 92-1076.
Supreme Court of Wisconsin.
Oral argument September 8, 1993.
Decided November 3, 1993.
*121 For the appellants there were briefs by Raymond E. Krek, William F. Hue and Krek & Hue, S.C., Jefferson and oral argument by Raymond E. Krek.
For the co-appellant there were briefs (in the court of appeals) by Nancy Wettersten and Julian, Musial, Wettersten & Friedrich, S.C., Madison and oral argument by Nancy Wettersten.
For the respondent, Laura S., there was a brief by Judith Sperling Newton, Carol M. Gapen and Stafford, Rosenbaum, Rieser & Hansen, Madison and oral argument by Judith S. Newton.
SHIRLEY S. ABRAHAMSON, J.
This is an appeal from orders of the Waupaca County Circuit Court, John P. Hoffmann, Circuit Judge, in a proceeding under sec. 48.837, Stats. 1991-92, for termination of parental rights and placement of a child with nonrelatives for adoption.[1] By order dated March 20, 1992, *122 the Waupaca county court terminated the parental rights of Laura S. and Michael R. to their son, Brandon S., and placed the child with nonrelatives for adoption.[2] By order dated April 13, 1992, the Waupaca county court denied the motion of David and Geraldine S., (Brandon's maternal birth grandparents), and Attorney Nancy C. Wettersten, Brandon's guardian ad litem appointed by the Dane county circuit court,[3] to intervene as parties in the Waupaca proceedings and to vacate the Waupaca county court's order of March 20, 1992.
The court of appeals certified the case to this court. Section 809.61, Stats. 1991-92.[4] We vacate the March 20, 1992, and the April 13, 1992, orders of the Waupaca county circuit court and remand the cause for further proceedings consistent with this opinion.
*123 This case involves proceedings under sec. 48.837 to terminate parental rights and approve a petition for adoption. Under sec. 48.837, the birth parents and the proposed adoptive parents may jointly petition for an adoptive placement to be approved by the circuit court. If the circuit court approves the adoptive placement, it then proceeds to the voluntary termination of parental rights.
In this case, the birth parents and proposed adoptive parents filed their petition under sec. 48.837 in Waupaca county circuit court. The grandparents had previously initiated an action for custody and visitation which was pending in the Dane county circuit court. According to the record, the Waupaca court was aware that the child had a longstanding relationship with the grandparents and that neither the grandparents nor the Dane county guardian ad litem had been notified of the proceedings or had been present at the hearing.
This case presents three questions: (1) Should the Dane county guardian ad litem have been served with a summons and a copy of the petition filed in the sec. 48.837, Stats. 1991-92, proceedings in Waupaca county circuit court and permitted to advocate, along with the Waupaca county guardian ad litem, for the best interests of the child in those proceedings? (2) Should Brandon's grandparents have been permitted to intervene as parties in the sec. 48.837 termination of parental rights and adoptive placement proceedings in the Waupaca county circuit court? (3) Under the circumstances of this case, did the Waupaca county circuit court erroneously exercise its discretion in terminating parental rights and in placing the child for adoption with nonrelatives under sec. 48.837 without *124 giving the maternal birth grandparents an opportunity to be heard?[5]
We conclude that the Dane county guardian ad litem should have been served with a summons and a copy of the petition filed in the sec. 48.837, Stats. 1991-92, termination of parental rights and adoption placement proceedings in Waupaca county and should have been permitted to advocate for the best interests of the child in those proceedings. We conclude, as did the Waupaca county circuit court, that neither the grandparents nor the guardian ad litem should have been permitted to intervene as parties in the sec. 48.837 proceedings in the Waupaca county circuit court. We further conclude that, under the circumstances of this case, the Waupaca county circuit court erroneously exercised its discretion in deciding the best interests of Brandon without hearing and considering important relevant evidence that the maternal birth grandparents might have furnished about their longstanding relationship with Brandon and the harm to the child if the relationship were severed.
I.
The facts are not in dispute for purposes of this appeal. Brandon was born July 30, 1989, to Laura S. and Michael R. Michael never had any contact with his *125 son, but his paternity was adjudicated, and he appeared in Waupaca county circuit court to consent to the termination of his parental rights to Brandon.
In May 1990, Laura and Brandon moved back to her parents' home in Dane County. Although Brandon and his mother moved out of the grandparents' home in September 1990, Brandon continued to spend large blocks of time with his grandparents, including the weekends and several week-day overnights each week. Thus the grandparents cared for Brandon for more than 14 months.
Relations between Laura and her parents deteriorated, and in January, 1992, she severed all contact between her parents and Brandon, placing him in a 24-hour-a-day child care facility. Brandon was two and a half years old at this time.
On February 10, 1992, the grandparents filed an action in Dane county circuit court seeking custody and visitation of Brandon. Laura was served with the summons and petition for the Dane county action on February 11, 1992. In February 1992, Laura's attorney unsuccessfully sought to dismiss the Dane county action. The Dane county circuit court appointed Attorney Nancy Wettersten as guardian ad litem for Brandon on March 4, 1992, pursuant to sec. 767.045, Stats. 1991-92.
On February 25, 1992, Laura initiated a proceeding in the Waupaca county circuit court, filing a petition (dated February 11, 1992) to terminate her parental rights in conjunction with a petition to place Brandon for adoption under sec. 48.837, Stats. 1991-92. Waupaca county is the county of residence of the proposed adoptive parents Laura had selected. They were unrelated to her and were previously unknown to her.
*126 In accordance with the procedures set forth in sec. 48.837, the Waupaca county circuit court scheduled a hearing and appointed a guardian ad litem for Brandon under sec. 48.235. When the hearing began on March 20, 1992, Laura's attorney informed the Waupaca court of the pending Dane county proceedings and of the Dane county guardian ad litem's intention to seek an injunction in Dane county to halt the Waupaca proceedings. The interest of Laura's family in regard to the proceedings was further evidenced when Laura's sister called the clerk of court's office to find out whether Laura was in court. Informed of the call and mindful of the confidentiality of the proceedings, the Waupaca court directed the clerk's office to say Laura was not there, even though she was present. Laura and the prospective adoptive parents were advised of the grandparents' petition for custody and visitation, the grandparents' attempts to stop the Waupaca county proceedings, and the possibility that litigation and appeals might delay the adoption process and increase its cost. Each decided to continue in the Waupaca court with the termination of parental rights and the adoptive placement.
The Waupaca court heard testimony from Laura, the proposed adoptive mother, a therapist who had seen Brandon and an adoption agency social worker. All discussed Brandon's grandparents in negative terms. Neither the grandparents nor proponents of the grandparents' position were given an opportunity to appear and be heard.
On March 20, 1992, the Waupaca county circuit court ordered termination of parental rights, appointed Community Adoption Center as guardian, and placed Brandon with the proposed adoptive parents.
*127 On April 3, 1992, the Dane county guardian ad litem and the grandparents filed a motion in the Waupaca county circuit court to intervene in the proceedings and to vacate the Waupaca court's order terminating parental rights. On April 13, 1992, following a hearing, the Waupaca court denied the motion to intervene. The Waupaca court later stayed the adoption proceedings pending a ruling on appeal, but did not stay the order terminating parental rights. The Dane county guardian ad litem and the grandparents appealed the March 20 and April 13 orders, urging that the orders be vacated. This court accepted the court of appeals' certification of the case.
Brandon, through his guardians ad litem, is on both sides of this appeal. The Waupaca county guardian ad litem has joined in the position taken by Laura that the orders be affirmed. The Dane county guardian ad litem has filed a brief in this court urging that the Waupaca court's orders be vacated. Additional facts will be set forth in the opinion.
II.
[1]
We first decide whether the Dane county guardian ad litem should have been served with a summons and petition in the Waupaca county circuit court proceedings for the termination of parental rights and adoptive placement of Brandon under sec. 48.837, Stats. 1991-92. This is a question of statutory interpretation which we decide independently of the circuit court.
In a proceeding to terminate parental rights the petitioner must serve a summons and petition on, among others, the child's guardian ad litem. Section 48.42(2)(c), Stats. 1991-92. The statutory reference to the guardian ad litem ordinarily signifies the guardian *128 ad litem appointed in the termination of parental rights proceeding. In this case the Waupaca county circuit court appointed a guardian ad litem for Brandon. This guardian ad litem was served, appeared, and advised the Waupaca court that the termination of parental rights and adoptive placement were in Brandon's best interests.
The question here is whether the power of Brandon's Dane county guardian ad litem is limited to the Dane county proceeding or whether the Dane county guardian ad litem should have been served in the Waupaca court proceedings. Although the parties disagree, no one cites authority addressing the powers or responsibilities of a guardian ad litem appointed under one chapter of the statutes to advocate in a proceeding under another chapter or appointed by one circuit court to advocate before a different circuit court.
[2]
The two guardians ad litem in this case were appointed under different statutes, the Dane county guardian ad litem under sec. 767.045, relating to actions affecting the family, and the Waupaca county guardian ad litem under sec. 48.235, relating to termination of parental rights and adoptive placement. Nevertheless the responsibilities of a guardian ad litem appointed under these two statutes are substantially the same.[6] Both guardians ad litem function independently, "in the same manner as an attorney for *129 a party," and advocate for the child's best interests, not for the child's wishes. The Judicial Council Notes to sec. 767.045(4) state that the guardian ad litem "functions in the same manner as the lawyer for a party ... [and] in this case the `party' is the best interests of the child." Judicial Council Notes1989, sec. 767.045, West's Wis. Stats. Annot. p. 158 (1993). Thus "the guardian ad litem does not represent a child per se. Rather the guardian ad litem's statutory duty is to represent the concept of the child's best interest." In re Marriage of Wiederholt v. Fischer, 169 Wis. 2d 524, 536, 485 N.W.2d 442 (Ct. App. 1992) (emphasis in original).
No statutory provision prohibits a guardian ad litem appointed under one chapter of the statutes or appointed by one circuit court from acting in a proceeding brought under another chapter of the statutes or in another circuit court. The very phrase "guardian ad litem," however, implies that the person's power is limited to the proceeding for which he or she was appointed.[7] Yet advocating for the child's best interests *130 in a particular proceeding may necessitate taking action with respect to another lawsuit. The responsibility of a guardian ad litem appointed under sec. 767.045 is to be an advocate for the best interests of the child "as to legal custody, physical placement and support." In this case the termination of parental rights and adoptive placement proceedings in Waupaca county clearly affect Brandon's "legal custody, physical placement and support." Accordingly under sec. 767.045 the Dane county guardian ad litem had the responsibility to advocate for Brandon beyond the proceedings for which she was appointed.
[3, 4]
In light of the legislative policy of protecting the best interests of the child and the responsibility of the guardian ad litem to be an advocate for the best interests of the child, we conclude that the guardian ad litem's responsibility under sec. 767.045 is to do whatever a prudent attorney "would recommend to a competent adult client in the same situation."[8] The difference between a competent adult's attorney and a guardian ad litem is that the role of the guardian ad *131 litem extends beyond making recommendations to implementing the recommendations.[9]
In this case a prudent attorney, representing a person in a Dane county circuit court action relating to custody and visitation and knowing about the Waupaca court proceedings, would recommend that the client attempt to participate in the Waupaca proceedings. The Dane county guardian ad litem therefore had the responsibility to consider this course of action and implement it. That is what she did.
The Dane county guardian ad litem asks that she appear in the Waupaca proceedings either as an interested person or as a party. While the Dane county guardian ad litem's role in the Waupaca court proceedings arises from Brandon's status in the proceedings, the guardian ad litem's role must be distinguished from the child's.
We have stated that the child has an interest in a proceeding terminating parental rights under ch. 48 because of his or her right to the traditional parental bonds, including the right to financial, physical and emotional care. In Interest of C.E.W., 124 Wis. 2d 47, 65-66, 368 N.W.2d 47 (1985). While we have not decided whether the child is a "party" to the termination of parental rights proceeding, some statutory *132 provisions would lead the reader to that conclusion.[10] Thus, the Dane county guardian ad litem's role in the Waupaca court proceedings is as an advocate for Brandon's best interests and arises from Brandon's being an interested person or party.[11]
[5]
In sum, we conclude that the Dane county guardian ad litem could act outside the Dane county family court action to satisfy her obligations under sec. 767.045(4), not as a party or interested person, but as "an advocate for the best interests of a minor child as to legal custody, physical placement and support." Because the proceedings in the Waupaca county circuit court could affect Brandon's legal custody, physical placement and support, the Dane county guardian ad litem should be able to advocate for Brandon in those proceedings. The Waupaca court was advised on the record of the Dane county proceedings and the appointment of the Dane county guardian ad litem. Under these circumstances, the Dane county guardian ad litem should have been served with a summons and petition in the Waupaca county circuit court proceedings. By moving the Waupaca county circuit court to *133 vacate the order for termination of parental rights and adoptive placement, the Dane county guardian ad litem acted in a manner consistent with her statutory responsibilities. The Waupaca circuit court should have vacated the order for termination and allowed the Dane county guardian ad litem to appear in the Waupaca proceedings to represent Brandon's best interests. Furthermore, had the Dane county guardian ad litem been permitted to appear in the Waupaca proceedings, she could have been the means for the Waupaca and Dane county courts to communicate and possibly the means for avoiding two actions.
We recognize that, as a result of this decision, Brandon will have two persons advocating for his best interests in the Waupaca county circuit courtthe Dane county and the Waupaca county guardians ad litem. We do not know whether their positions will be inconsistent. While the Waupaca county guardian ad litem recommended termination of parental rights and approval of the adoptive placement, the Dane county guardian ad litem has not set forth a position on Brandon's best interests in the Waupaca county proceedings. See Guardian ad Litem's Brief, p. 9.
III.
We turn to the question whether Brandon's maternal birth grandparents should have been given the opportunity to participate in the sec. 47.837 proceedings for termination of parental rights and adoptive placement in the Waupaca county circuit court and, if so, in what capacity.
A.
First, the grandparents contend that they are entitled to intervene as parties under the Uniform Child *134 Custody Jurisdiction Act (UCCJA), codified as chapter 822. The grandparents argue that ch. 822, read in conjunction with several provisions of ch. 48, requires that they be made parties to and be given notice of the Waupaca court proceedings.
Their reasoning can be summarized as follows: (1) The Waupaca court was hearing a petition for the termination of parental rights to their grandchild. (2) Section 48.42(2), Stats. 1991-92, which specifies who must be summoned in proceedings for the termination of parental rights, requires service on the guardian ad litem, the legal custodian of the child, and "any other person to whom notice is required to be given under Ch. 822."[12] Additionally, secs. 48.027 and 767.015 provide that "[a]ll proceedings relating to the custody of children shall comply with the requirements of ch. 822." This court has stated that termination proceedings qualify as "custody proceedings" under ch. 822. In the Interest of A.E.H., 161 Wis. 2d 277, 287, 468 N.W.2d 190 (1991). (3) They are entitled to notice under ch. 822.
We recognize that the notice and joinder provisions of ch. 822 seem to encompass many persons. Under ch. 822 a person who claims to have legal custody *135 or visitation rights with respect to a child in a custody proceeding is to "be joined as a party in that proceeding and to be duly notified of the pendency of the proceeding and of the person's joinder as a party."[13] In addition, ch. 822 requires that "contestants" and any person who "has" physical custody of the child receive notice and be given an opportunity to be heard.[14] A contestant is defined as a person who claims a right to legal custody, physical placement or visitation with respect to a child. Section 822.02(1), Stats. 1991-92.
The grandparents claim a right to legal custody and visitation of Brandon and argue that they are "contestants" under ch. 822 for Brandon's custody by virtue of the petition they filed in the Dane county circuit court. They argue that they "had" physical custody of Brandon until his mother removed him from their care. Thus, they contend that they are entitled to notice and joinder as parties in the Waupaca proceedings based on the plain language of secs. 48.42(2)(d) and ch. 822.
*136 [6]
We conclude that the grandparents' argument ignores the manifest purpose of the UCCJA, which was to address the problem of the "interstate child" caught in custody battles waged across state lines. The legislative history of the UCCJA demonstrates that the Act was developed to cope with the increasing numbers of children living under court-determined custody arrangements and with the United States Supreme Court decisions affecting interstate child custody disputes.[15] The prefatory note to the UCCJA[16] and the UCCJA's statement of purpose[17] specifically address *137 its application to custody controversies that cross state lines. As Brigitte M. Bodenheimer, the Reporter for the Commissioners' Special Committee on Child Custody Jurisdiction which prepared the UCCJA, explained: "The Uniform Act deals almost exclusively with the interstate aspects of custody proceedings."[18]
The drafters of the UCCJA left the substantive and procedural aspects of adjudicating custody disputes to other uniform laws and state statutes. For example, the Commissioners prepared legislation to improve intrastate custody law and procedure as part of the Uniform Marriage and Divorce Project. The comment to sec. 401 of the Uniform Marriage and Divorce Act explains that the UCCJA "deals with judicial jurisdiction to adjudicate a custody case when more than one state has an interest in the litigation" and that the Uniform Marriage and Divorce Act "governs the substantive and procedural aspects of custody adjudication once the court has decided that it can and should hear the case on the merits." Comment, sec. 401, Uniform Marriage and Divorce Act, 9A U.L.A. at 550 (1987). Thus the Uniform Marriage and Divorce Act has its own provisions, apart from the UCCJA, specifying who shall be given notice, and who may appear, be heard and file responsive pleadings. Under sec. 401(e), Uniform Marriage and Divorce Act, 9A U.L.A. 550 (1987), in a child custody proceeding notice must be given the child's parent, guardian and custodian. The Act provides that the court, upon a showing of good cause, may permit intervention of other interested parties. Had the drafters of the Uniform Marriage and Divorce Act viewed the UCCJA as governing *138 the parties in an intrastate custody proceeding they would have suggested that this notice and joinder provision be omitted if the state had adopted the UCCJA.[19]
All fifty states have adopted some form of the UCCJA. With one exception, the state appellate courts that have considered whether the state's version of the UCCJA applies to intrastate custody disputes have concluded that it does not.[20] The one decision holding that the UCCJA applies to all custody cases, including intrastate disputes, failed to cite any authority for its conclusion or state a persuasive rationale.[21] A survey of law review articles on the UCCJA shows that the commentators did not view the Act as having intrastate application.[22]
*139 Despite this history of the UCCJA, the question nonetheless remains whether the Wisconsin legislature intended to apply the UCCJA to intrastate custody proceedings when it inserted language requiring compliance with the requirements of ch. 822 in sec. 48.42(2)(d) governing termination of parental rights. This language requiring compliance with ch. 822 could be interpreted in two ways: either that the provisions of ch. 822 must be followed in every termination of parental rights case in Wisconsin, as the grandparents urge, or that ch. 822 must be considered in every case but followed only in interstate cases.
[7]
We examine the Wisconsin statutes and the Wisconsin legislative drafting records to determine the legislative intent. The Wisconsin legislature made only minor modifications to the UCCJA; it adopted almost verbatim the Uniform Act's statement of general purposes.[23] *140 As we stated previously, the purpose section is almost exclusively dedicated to interstate disputes. The Legislative Reference Bureau's analysis of the UCCJA prepared for the legislature envisions ch. 822 as having an impact exclusively on interstate child custody cases.[24] We conclude that it is unlikely that the Wisconsin legislature would, without any apparent consideration, adopt new procedural requirements for custody cases in purely intrastate disputes.
The difficulty with interpreting sec. 48.42(2)(d) as requiring that all the provisions of ch. 822 be applied in every termination of parental rights case is that the requirements of ch. 822 may be inconsistent with provisions in ch. 48. This case presents one such example. Section 48.837, relating to termination of parental rights and adoptive placement, was enacted six years after the legislature adopted the UCCJA. It specifies the procedure to be used for petitions for voluntary termination of parental rights under sec. 48.42 and for petitions for approval of nonrelative adoptive placement. If ch. 822 applies to all termination of parental rights proceedings, as the grandparents urge, then the ch. 822 notice and joinder provisions require notice to persons the legislature did not specify and may not have intended to include in the process mandated by sec. 48.837. For example, sec. 48.837(5) requires that the petitioners (in this case the mother and the proposed adoptive parents), and the child, if the child is 12 years of age or older, attend the hearing on adoptive placement. The proposed adoptive parents may also *141 attend the hearing on termination of parental rights if the custodial parent and the court approve. The statute does not specify that anyone else should or may participate. Yet ch. 822 requires the joinder of other persons as parties.
[8]
The interpretation of sec. 48.42(2)(d) and ch. 822 that furthers the purposes of the respective chapters is that in every child custody and termination of parental rights case, the circuit court must consider whether the provisions of chapter 822 apply. In other words, the circuit court must first decide whether the case involves persons outside the state and thus falls within the scope of the UCCJA. One way of gaining the information necessary to make such a decision is for the circuit court to request the information required by sec. 822.09.
Section 822.09 provides that the first pleading in a custody case, or an affidavit attached to the first pleading, shall state under oath the child's present address, the places where the child has lived within the last five years, and the names and addresses of the persons with whom the child has lived during this period. In addition, the pleading or affidavit must state whether the person has participated as a party or witness, or in any other capacity in any other litigation concerning the custody of the child; has information of any custody proceeding concerning the child pending in any court of this or any other state; or knows of any person not a party to the proceedings who has physical custody of the child or claims to have legal custody, physical placement or visitation. In this way, the circuit court will be advised whether ch. 822 applies. One commentator explained sec. 822.09 as follows: "From the facts presented, the court will decide whether additional *142 parties must be joined or if other jurisdictions must be notified. Courts must take an active role in determining whether there are any interstate considerations included in a child custody hearing."[25]
[9, 10]
Compliance with sec. 822.09 ensures that a circuit court is aware of the people and courts within the state and elsewhere who have an interest in a child's custody. Beyond this threshold consideration of whether a case presents an interstate dispute, we conclude that the legislature intended ch. 822 to apply to interstate custody cases, not to purely intrastate disputes. Although precise compliance with the terms of sec. 822.09 was lacking in this case, the data required by sec. 822.09 was available to the Waupaca court through information provided by Laura's attorney, the Waupaca county guardian ad litem, and the social service agency. Because that information demonstrates that this case is not an interstate case, we conclude ch. 822 is not applicable.
The grandparents argue that if ch. 822 applies only to interstate cases then grandparents who reside out of the state may have greater rights than those who reside in Wisconsin. Although the grandparents allude to equal protection implications of this interpretation they do not brief the issue, and we do not reach it. The UCCJA was designed to discourage the abduction of children across state lines in the context of custody disputes, and the Act's broad notice and party joinder provisions serve this purpose. Applying such broad notice and party joinder provisions in intrastate custody disputes is not consistent with the purposes and *143 policies underlying sec. 48.837 which limits the persons who must be notified of and summoned to the proceedings.
B.
The grandparents contend that if their position on ch. 822 is not accepted, then the intervention statute, sec. 803.09, Stats. 1991-92, applies and entitles them to intervene as parties. They argue that their right to seek custody of Brandon was at stake in the termination and adoptive placement proceedings and that their petition for custody filed in the Dane county circuit court might be foreclosed by the termination of Laura's parental rights and approval of the adoptive placement. Accordingly, they urge that the Waupaca court erred in denying them status as mandatory or permissive intervenors in that proceeding.
[11, 12]
Section 803.09 applies to chapter 48 proceedings except where a different procedure is prescribed by statute or rule.[26] Chapter 48 does not prescribe a different procedure for intervention. Nevertheless it is clear from the statutes that the legislature intended sec. 48.42(2) prescribing who must be summoned in a termination of parental rights proceeding to be the exclusive statute on the subject. Bringing in additional parties in a ch. 48 proceeding through the intervenor statute is not consistent with the purposes and policies underlying the statutory proceedings set forth in ch. 48 *144 which limit the persons who must be notified of the proceedings. Accordingly, we conclude that sec. 803.09 does not apply in this case.
C.
The grandparents also argue that they are parties under ch. 48 and are entitled to notice and summons because they qualify as "interested parties." According to sec. 48.01(1)(a), it is a legislative purpose of chapter 48 to ensure that "children and all interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced ..." The grandparents urge that they qualify as "interested parties" under sec. 48.27(6), the general notice and jurisdictional provision which states that "all interested parties shall receive notice and appropriate summons." This general notice and jurisdictional provision is applicable to a wide variety of ch. 48 proceedings.[27] Although the grandparents cite this provision, they do not analyze its interplay with other provisions in ch. 48.
*145 The ch. 48 statutory provisions on parties, notice and summons pose something of an interpretative riddle. At various points ch. 48 uses the terms "party,"[28] "interested party,"[29] and "necessary party"[30] without defining them.
Furthermore, the statutory requirement in sec. 48.27(6) that all "interested parties" receive notice and summons in a wide variety of ch. 48 proceedings, including terminations of parental rights, seems inconsistent with other provisions in ch. 48 that specify who must be notified and summoned in a particular proceeding. Specifically, sec. 48.27(6) seems inconsistent with sec. 48.42(2) which specifies the persons to be summoned in a termination of parental rights proceeding. Sec. 48.27(6) also appears to be inconsistent with sec. 48.837(5) which specifies who may attend a hearing in termination of parental rights and adoptive placement proceedings.
Moreover, the legislative history of sec. 48.837 suggests that the drafters did not contemplate application of sec. 48.27(6) to termination of parental rights and adoptive placement proceedings under sec. 48.837. First, there is no reference to sec. 48.27(6) in the extensive 1981 drafting records of sec. 48.837. Second, from *146 1981 to 1989 some courts apparently were excluding adoptive parents from both the adoptive placement and termination of parental rights hearings. Drafting Records, Legislative Reference Bureau, 1989 Wis. Act 161. If sec. 48.27(6) were applicable to a sec. 48.837 proceedings, the proposed adoptive parents would be "interested parties" and would be entitled to notice, summons and the right to participate at both proceedings. Yet some courts concluded that the proposed adoptive parents should be excluded to preserve the confidentiality of the proceedings, even though the legislature had enacted sec. 48.837 to enable birth parents and adoptive parents to know each other. In 1989, sec. 48.837 was amended to require the presence of the proposed adoptive parents at the adoptive placement hearing and to allow their presence at the termination of parental rights hearing, with the consent of the parent who has custody of the child and the approval of the circuit court. This 1989 amendment would not have been needed if the legislature intended sec. 48.27(6), the general notice and jurisdictional requirement, to be applied to sec. 48.837.
Finally it must be pointed out that at common law grandparents possessed no legally recognized rights or interests in their grandchildren. Grandparents' rights and interests are only beginning to evolve as state legislatures have enacted laws recognizing them.[31] The *147 unusual nature of the proceeding for voluntary termination and adoptive placement with nonrelatives makes the legislature's omission of reference to grandparents in sec. 48.837 conspicuous. If the legislature had intended for grandparents to participate as parties in a sec. 48.837 proceeding it would have said so.
[13]
For the reasons set forth, we conclude that sec. 48.27(6), the general notice and jurisdictional provision of ch. 48, is not applicable to sec. 48.837 proceedings on termination and adoptive placement. Our conclusion does not mean, however, that the grandparents have no role in the Waupaca court proceedings. On the contrary. The decision to terminate parental rights transforms the legal relationship not only between parent and child, but also between the parent's family and the child. While the people most profoundly affected by a decision from the Waupaca county circuit court are Brandon and his birth and adoptive parents, his relationships with other people, including his maternal birth grandparents, can be changed along with his legal status in the family.
To determine what course of action is in the child's best interests a circuit court must understand, among other factors, the nature of the child's substantial relationships with family members. Section 48.426(3), Stats. 1990-91.[32] Unless the circuit court is willing to *148 listen to people who have formed such relationships with the child, it cannot make a reasoned determination of the child's best interests.[33] Although we agree with Laura that the confidentiality of the proceedings (sec. 48.299) should be maintained, confidentiality must not be used to block the circuit court's access to evidence relevant to determine the best interests of the child under sec. 48.426(3).
[14]
Although we agree with the circuit court that for purposes of the Waupaca county proceedings the grandparents were not "interested parties" under the general notice and jurisdictional provision in ch. 48, we conclude that they have important, relevant evidence about their longstanding relationship with Brandon and the possible harm to the child if the relationship were severed. This is information which the Waupaca court should consider in determining Brandon's best interests. We therefore conclude, as we explain more *149 fully below, that the Waupaca court erroneously exercised its discretion in deciding Brandon's best interests without giving the grandparents an opportunity to be heard.
IV.
The Dane county guardian ad litem and the maternal birth grandparents contend that the Waupaca court erroneously exercised its discretion in determining that it was in Brandon's best interests to terminate Laura's parental rights and sever the child's ties with his birth family. They rest their argument on the fact that the Waupaca court knowingly based its decision on incomplete information. According to the record, the Waupaca court was aware that the grandparents had filed a custody petition in Dane county, that they vehemently opposed their daughter's petition for termination and adoptive placement, and that the Dane county guardian ad litem was attempting to stop the Waupaca county proceedings. The Waupaca court erroneously exercised its discretion, they argue, by making a momentous decision in Brandon's life while deliberately closing the courtroom to grandparents who, according to the information provided in the Waupaca court, had a longstanding relationship with the child.
[15-17]
The legislature and this court have made clear that the best interests of the child is the polestar of all determinations under ch. 48.[34]In re the Custody of *150 D.M.M., 137 Wis. 2d 375, 390, 404 N.W.2d 530 (1987); In re Termination of Parental Rights of M.A.M., 116 Wis. 2d 432, 442, 342 N.W.2d 410 (1984); Adoption of Tachick, 60 Wis. 2d 540, 547, 210 N.W.2d 865 (1973). A determination of the best interests of the child in a termination proceeding depends on first-hand observation and experience with the persons involved and therefore is committed to the sound discretion of the circuit court. A circuit court's determination will not be upset unless the decision represents an erroneous exercise of discretion. Termination of Parental Rights to Kegel, 85 Wis. 2d 574, 579, 271 N.W.2d 114 (1978).
[18, 19]
The exercise of discretion requires a rational thought process based on examination of the facts and application of the relevant law. Hartung v. Hartung, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). However, a circuit court can only weigh the evidence it decides to hear. To the extent that a circuit court excludes important and available testimony relevant to its determination of the best interests of the child, its resulting determination cannot be considered rational.
Section 48.426(3) enumerates the factors to be considered by a circuit court in determining a petition to terminate parental rights. Among those factors are the child's substantial relationships with the parent or other family members and the harm to the child if those relationships were severed. In its Order and Findings of Fact, the Waupaca county circuit court found that Brandon had a "substantial parental relationship" with Laura and a "grandparental relationship with the birth mother's parents. He also had a relationship with other members of the birth *151 mother's family."[35] Given the requirements of sec. 48.426(3), the grandparents' expressed interest in participating in the proceedings, and the Waupaca court's finding that Brandon had a grandparental relationship with his maternal birth grandparents, it should have been clear to the Waupaca court that the grandparents were available to provide important, relevant evidence in the proceeding relating to their longstanding relationship with the child and the harm to the child if the relationship were severed. It was an erroneous exercise of discretion for the Waupaca court to exclude their testimony.
The record shows that the Waupaca court was aware that Brandon had spent much of his life in the care of his maternal birth grandparents. It was aware of their pending custody action in Dane County and of the Dane county guardian ad litem's opposition to the Waupaca court proceedings. Third parties, such as the adoption agency social worker and the Waupaca guardian ad litem who had investigated the family situation, presented information to the Waupaca court. Although the Waupaca court heard testimony unflattering to the maternal birth grandparents, the grandparents did not have an opportunity to tell the Waupaca circuit court about their relationship with their grandchild. Information about the longstanding relationship between Brandon and the maternal birth grandparents filtered *152 through third persons is not equivalent to giving the grandparents an opportunity to be present and to testify themselves. Under basic concepts of fairness to Brandon and the best interests of the child, the grandparents should have had an opportunity to appear as witnesses and to be heard. Had the Dane county guardian ad litem been given an opportunity to appear, she might have called the grandparents as witnesses. Furthermore this court has recognized a trial judge's power to call and examine witnesses in order to obtain relevant testimony. State v. Nutley, 24 Wis. 2d 527, 562, 129 N.W.2d 155 (1964), overruled on other grounds by State v. Stevens, 26 Wis. 2d 451, 463, 132 N.W.2d 502 (1965). See also sec. 906.14, Stats. 1990-91; 9 Wigmore on Evidence sec. 2484, p. 277 (1981).
[20]
Because its decision was made without hearing important evidence relevant to Brandon's longstanding relationship with his grandparents and Brandon's best interests, we hold that the Waupaca court erroneously exercised its discretion. We remand this matter for further proceedings. The Waupaca circuit court maintained the status quo pending appeal and stayed the final adoption hearing until 10 days after this court renders its decision in regard to this case. We conclude that the status quo should be maintained pending the further proceedings of the circuit court consistent with this opinion.
[21, 22]
The last question to be addressed is the remand. The grandparents argue that venue in Dane county is appropriate under sec. 48.185(2) which provides for venue for termination of parental rights proceedings in the county where the birth parent resides or where the *153 child resides or is present. They assert that Dane county is the residence of the birth mother and the child. Laura contends that the case is properly venued in Waupaca county because sec. 48.83 requires that a petition for approval of adoption under sec. 48.837 be heard by the circuit court of the county where the adoptive parents or the child reside. The proposed adoptive parents in this case reside in Waupaca county. Thus under the statutes both Dane and Waupaca county appear to be appropriate venues in a proceeding under sec. 48.837 which combines both termination of parental rights and adoptive placement. The legislature intended the petition for termination of parental rights and the adoptive placement to be heard by the same court at the same time.[36] Accordingly we conclude that in a sec. 48.837 proceedings, venue in any county satisfying the requirements of either sec. 48.837 or sec. 48.185(2) is appropriate. Thus in this case venue in either Dane or Waupaca county was appropriate for the sec. 48.837 proceedings.
Because the Dane county guardian ad litem was not notified of the Waupaca proceedings and given the opportunity to participate as an advocate for Brandon's best interests and because the Waupaca court erroneously exercised its discretion in excluding the grandparents from testifying, we vacate its March 20, 1992, order terminating parental rights and approving *154 the adoptive placement. We affirm its April 13, 1992, order denying the maternal birth grandparents and the guardian ad litem the right to intervene as parties. We vacate that part of the April 13, 1992, order that refused to vacate the order for termination of parental rights and adoptive placement. The cause is remanded to the Waupaca county circuit court for further proceedings as the circuit court deems advisable, giving the Dane county guardian ad litem an opportunity to participate as an advocate for Brandon's best interests and giving the maternal birth grandparents an opportunity to be heard as witnesses.
By the Court.The orders of the circuit court are affirmed in part and vacated in part and the cause remanded.
NOTES
[] Motion for reconsideration denied January 11, 1994.
[1] Section 48.837(1) and (3), Stats. 1991-92, provide:

(1) Adoptive Placement. A parent having custody of a child and the proposed adoptive parent or parents of the child may petition the court for placement of the child for adoption in the home of a person who is not a relative of the child if the home is licensed as a foster home under s. 48.62.
(3) Petition for Termination of Parental Rights Required. The petition ... shall be filed with a petition under s. 48.42 for the voluntary consent to the termination of any existing rights of the petitioning parent or parents.
[2] Pending resolution of this case, legal custody of Brandon remains with Community Adoption Center and physical placement is with the proposed adoptive parents.
[3] As discussed below, Brandon has two guardians ad litem, one appointed by the Dane county circuit court under secs. 767.045, 767.24, and 767.245, Stats. 1991-92, the other appointed by the Waupaca county circuit court to advocate for Brandon in the proceeding under sec. 48.837, Stats. 1991-92.
[4] Section 48.465, Stats. 1991-92, provides that "an appeal from a judgment terminating or denying termination of parental rights or granting or denying an adoption shall be given preference."
[5] The court of appeals certified the questions as follows:

(1) whether the notice requirements of the Uniform Child Custody Jurisdiction Act (UCCJA), Ch. 822, Stats., apply to in-state grandparents who seek visitation with their grandchild, where the child's mother gave him up for adoption within the state; and (2) whether other statutes, either in conjunction with ch. 822, Stats., or independent of that chapter, require that grandparents with a pending action for custody and visitation in one county be given notice of a termination of parental rights action filed in another county.
[6] Section 767.045(4) describes the responsibilities of the guardian ad litem as follows:

The guardian ad litem shall be an advocate for the best interests of a minor child as to legal custody, physical placement and support. The guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and shall consider, but shall not be bound by, the wishes of the minor child or the positions of others in the best interests of the minor child....
Section 48.235(3) reads:
The guardian ad litem shall be an advocate for the best interests of the person for whom the appointment is made. The guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and shall consider, but not be bound by, the wishes of such person or the positions of others as to the best interests of such person....
[7] The phrase "guardian ad litem" comes from the Latin and literally means "guardian for the suit or action." State Bar of Wisconsin, The Guardian ad Litem Handbook, sec. 1.2 at p. 1-2 (1988).

Webster's Third New International Dictionary defines guardian ad litem as "a guardian appointed by a court to represent in a particular lawsuit the interests of a party who is minor...." Black's Law Dictionary (6th ed. 1990), citing Bowen v. Sonnenburg, 411 N.W.2d 390, 396 (Ind. App. 1980), defines guardian ad litem as "a special guardian appointed by the court in which a particular litigation is pending to represent an infant ... in that particular litigation, and the status of the guardian ad litem exists only in that specific litigation in which the appointment occurs.
In Richter v. Estate of Leiby, 107 Wis. 404, 407, 83 N.W. 694 (1900), the court characterized a guardian ad litem as representing a child in a particular lawsuit.
[8] State Bar of Wisconsin, The Guardian ad Litem Handbook, sec. 1.2, Supp. 1-2, March, 1993 (CLE Books 1987).
[9] State Bar of Wisconsin, The Guardian ad Litem Handbook, sec. 1.2, Supp. 1-2, March, 1993 (CLE Books 1987). The authors go on to list examples of implementing recommendations, including filing bankruptcy for a debt-ridden ward, obtaining a court order for a divorcing couple to co-operate with counseling for the children, or pursuing a parent who had converted a child's bank account for the return of the converted funds and then finding a safe place for the money.
[10] The child has rights generally accorded a party. See, e.g., sec. 48.422(5) relating to the hearing on a petition to terminate parental rights: "Any nonpetitioning party, including the child, shall be granted a continuance...." The child may request a jury trial or consult with counsel on the request for a jury trial or concerning a request for the substitution of a judge. Sections 48.31(1), (2), 48.422(4), (5), Stats. 1991-92.
[11] In a termination of parental right proceeding the guardian ad litem advocates for the best interests of the child, participating as a lawyer in both the fact finding and the dispositional stages. In Interest of C.E.W., 124 Wis. 2d 47, 65-66, 368 N.W.2d 47 (1985).
[12] Section 48.42(2)(c), (d) provides:

(2) Except as provided in sub. (2m), the petitioner shall cause the summons and petition to be served on the following persons:
. . .
(c) The guardian, guardian ad litem and legal custodian of the child.
(d) Any other person to whom notice is required to be given by Ch. 822, excluding foster parents.
Sections 48.027 and 767.015 were enacted in 1975 at the same time as ch. 822. A notice provision similar to one codified in sec. 48.42(2)(d) was also discussed in 1975 but was not adopted until 1979.
[13] Section 822.10 provides:

If the court learns from information furnished by the parties pursuant to s. 822.09 or from other sources that a person not a party to the custody proceeding has physical custody of the child or claims to have legal custody, physical placement or visitation rights with respect to the child, it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of the person's joinder as a party. If the person joined as a party is outside this state the person shall be served with process or otherwise notified in accordance with 822.05.
[14] Section 822.04 provides:

Before making a decree under this chapter, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given under s. 822.05.
[15] See Remarks of John W. Wade, presenter of the Act, in Proceedings in Committee of the Whole, Uniform Child Custody Jurisdiction Act, July 29, 1968, at p. 1: "The purpose of this Act is to take care of the problemalmost a disgraceful problem which has been existing because of the conflicts between states and because of attempts to abduct and carry away children for the purpose of obtaining conflicting decrees for custody."

See also, Brigitte M. Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand. L. Rev. 1207 (1969). She explains that the Act was developed to encourage stability in custody arrangements for children whose parents or other caretakers cross state lines to obtain modifications of custody decrees. "The states can impose rules on themselves by uniform legislation ... the Commissioners on Uniform State Laws have prepared a law which can remedy the harm done to children who are caught in the present jungle of the conflict of laws." Id. at 1216.
[16] See Prefatory Note to the UCCJA, 9 (Pt. 1) U.L.A. 116-118 (1988).
[17] See sec. 1, UCCJA, 9 (Pt. 1) U.L.A. at 123-24 (1988), which the Wisconsin legislature adopted almost verbatim in sec. 822.01, Stats. 1991-92.
[18] Brigitte M. Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand. L. Rev. 1207, 1219 (1969).
[19] For an example of advice given in the Uniform Marriage and Divorce Act for integrating that Act and the UCCJA by omitting provisions of the Uniform Marriage and Divorce Act, see Comment, sec. 401, Uniform Marriage and Divorce Act, 9A U.L.A. sec. 401, at 550 (1987).
[20] See, e.g., Barnett v. Klein, 765 P.2d 777, 780-81 (Okla. 1988); Amos v. Amos, 669 S.W.2d 200, 201 (Ark. 1984); Nelson v. Nelson, 433 So.2d 1015, 1019 (Fla. App. 1983); Gluse v. Dennison, 462 A.2d 32, 33 (Me. 1983); In re Marriage of Trouth, 631 P.2d 1183, 1185 (Colo. App. 1981); Clark v. Clark, 404 N.E.2d 23, 28 (Ind. App. 1980).
[21] Quisenberry v. Quisenberry, 785 S.W.2d 485, 488 (Ky. 1990). Justice Lambert filed a well-documented dissenting opinion that concludes that the UCCJA applies only in interstate disputes.
[22] See, e.g., Juliet A. Cox, Judicial Wandering Through a Legislative Maze: Application of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act to Child Custody Disputes, 58 Mo. L. Rev. 427 (1993); Russell M. Coombs, Custody Conflicts in the Courts: Judicial Resolution of the Old and New Questions Raised by Interstate Child Custody Cases, 16 Fam. L.Q. 251 (1981); William V. Dorsaneo, Due Process, Full Faith and Credit, and Family Law Litigation, 36 Sw. L.J. 1085 (1983); Russell M. Coombs, Interstate Child Custody: Jurisdiction, Recognition and Enforcement, 66 Minn. L. Rev. 711 (1982); Brigitte M. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam. L.Q. 203 (1981); 3 Fam. Advoc. 28 (1981); Leonard G. Ratner, Procedural Due Process and Jurisdiction to Adjudicate: (a) Effective Litigation Values vs. the Territorial Imperative (b) The Uniform Child Custody Jurisdiction Act, 75 Nw. U. L. Rev. 363 (1980); Robert S. Berman, Wisconsin and the Uniform Child Custody Jurisdiction Act: In Whose Hand Solomon's Sword, 61 Marq. L. Rev. 79 (1977). See also, Sheldon R. Shapiro, Validity, Construction, and Application of the Uniform Child Custody Jurisdiction Act, 96 A.L.R.3rd 968 (1980). Most commentaries focus on the aspects of the UCCJA that concern personal jurisdiction.
[23] The UCCJA's first section is codified at sec. 822.01. The only modification made by the Wisconsin legislature was to change the word "his" to "child's" in sec. 822.01(1)(c).
[24] Analysis by the Legislative Reference Bureau of 1975 Assembly Bill 1246.
[25] Robert S. Berman, Wisconsin and the Uniform Child Custody Jurisdiction Act: In Whose Hand Solomon's Sword, 61 Marq. L. Rev. 79, 104 (1977).
[26] Section 801.01(2) provides that chapters 801-847 govern procedure and practice in the circuit court in all civil actions and special proceedings except where a different procedure is prescribed by statute or rule. In other cases we have assumed that chs. 801-847 generally apply to ch. 48 proceedings. See In Interest of C.E.W., 124 Wis. 2d 47, 53, 368 N.W.2d 47 (1985).
[27] Section 48.27(6), the general notice and jurisdictional provision, states that: "[W]hen a proceeding is initiated under s. 48.14, all interested parties shall receive notice and appropriate summons shall be issued in a manner specified by the court, in accordance with applicable governing statutes."

Section 48.14 lists several types of proceedings over which the juvenile court has jurisdiction, including termination of parental rights and adoption.
The grandparents concede that while they are entitled to notice and summons under sec. 48.27(6), they are not necessarily entitled to all of the rights accorded other "interested persons" or "interested parties" under ch. 48. For example, only the parent, guardian or child is authorized by statute to request substitution of a judge. Section 48.29, Stats. 1991-92.
[28] See sec. 48.42(3) relating to termination of parental rights.
[29] See secs. 48.01(1)(a) describing the legislative purpose and 48.27(6) relating to ch. 48 proceedings including termination of parental rights and adoptive placement.
[30] See sec. 48.422(4) relating to termination of parental rights.

The terms party, interested party and necessary party may at time refer to persons other than parents, children, guardians ad litem, guardians, and custodians because when these persons are meant, they are specified as such in the statutes.
[31] Sections 48.925 and 767.245, Wis. Stats. 1991-92, grant visitation rights to a grandparent under certain circumstances.

For discussions of protecting the rights and interests of a grandparent in a grandchild, see, e.g., Jacquelynn B. Rothstein, Grandparent Visitation Rights, 65 Wis. Lawyer 11 (1992); Edward M. Burns, Grandparent Visitation Rights: Is it Time for the Pendulum to Fall? 25 Fam. L.Q. 59 (1991); Randall B. White, Children, Parents and Grandparents: Balancing the Rights of Association and Control, 1 Am. J. Fam. L. 473 (1987); Jody George, Children and Grandparents: The Right to Visit, 8 Children's Legal Rts. J. 2 (1987); Judy E. Nathan, Visitation After Adoption: In the Best Interests of the Child, 59 N.Y.U.L. Rev. 578 (1984).
[32] Section 48.426(3) reads:

In considering the best interests of the child under this section the court shall consider but not be limited to the following: (a) The likelihood of the child's adoption after termination. (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home. (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships. (d) The wishes of the child. (e) The duration of the separation of the parent from the child. (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.
[33] Cf. Kristen Jones Indermark, Permissive Intervention Grandparents' Key to Entering Adoption Proceedings, 26 Ga. L. Rev. 787, 803 (1992), suggesting that while the grandparents participation poses a hazard to the rights and interests of the natural and adoptive parents, the circuit court should allow permissive intervention when the grandparents have information relevant to the child's best interests.
[34] Section 48.01(2) reads:

This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.
[35] In her statement to the Waupaca court, the Waupaca county guardian ad litem characterized the relationship between Brandon and his maternal birth grandparents as "substantial." She told the Waupaca court that "I believe there is a substantial relationship between [Brandon] and his maternal grandparents. They care very much for him. They love him very much, and I think that is evidenced by the fact that they filed an action in Dane County for grandparent rights."
[36] The petition for placement for adoption is heard first. If the proposed placement is not approved, the birth parent could withdraw the petition for termination of parental rights. In this way a parent could influence the choice of adoptive placement. Memo from Bob Lang, Legislative Fiscal Bureau, to Members of the Joint Committee on Finance, on Assembly Bill 369, 1981: Health and Social ServicesPlacement of Children for Adoption, dated June 19, 1981.