COURT OF APPEALS
DECISION
DATED AND FILED

September 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1290**

Cir. Ct. No. 2019TP231

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.J., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

        PETITIONER-RESPONDENT,

    V.

D.W.,

        RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1     WHITE, J.[1] D.W. appeals the circuit court order terminating his parental rights to his child, K.J. D.W. argues that the circuit court erroneously exercised its discretion in granting the petition to terminate his parental rights because the circuit court failed to weigh relevant facts affecting the best interests of the child in consideration of the petition for the termination of parental rights (TPR). We disagree, and accordingly, we affirm the circuit court.

## BACKGROUND

¶2     In November 2019, the State filed a petition for TPR for K.J., born in September 2016, the non-marital child of L.J.[2] and D.W. The State alleged two grounds for the TPR with regard to D.W.: failure to assume parental responsibility and continuing CHIPS.[3] Relevant to this matter, D.W. was incarcerated before K.J.'s birth and his expected release date is 2026. D.W. repeatedly and consistently sought to have K.J.'s placement changed to one of his family members instead of the foster placement that had cared for K.J. nearly his entire life.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] L.J.'s parental rights were terminated in the course of these proceedings. She is not appealing this decision and we do not address her rights.

[3] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

¶3      The case proceeded to trial[4] in January 2021, during which the circuit court found that the State proved one ground for the TPR—continuing CHIPS—but the State did not prove D.W.'s failure to assume parental responsibility.  The case then continued into the dispositional phase to determine whether TPR was in the best interests of the child.

¶4      In the dispositional phase, the circuit court heard testimony from J.S., K.J.'s foster mother; E.K., the family case manager (FCM) at Children's Wisconsin, the agency that managed K.J.'s out-of-home placement for the Division of Milwaukee County Child Protective Services (DMCPS);[5] two of D.W.'s sisters; D.W.'s mother, S.M.; and D.W. himself.  The family members each testified about their willingness to care for K.J.

¶5      J.S. testified that K.J. had been placed in her home at eight weeks old; he is attached to her son who is twenty months older (and who was also adopted); and K.J. calls her and her husband, "mom and dad."  She testified that she coordinated visitation with S.M. and that the relationship with K.J.'s biological family was:

> Ever-changing…. I love [S.M.].  That's the only way to put it.  There's things you can't give a child when you adopt them and we have learned that having done this before.  I can't give him my blood.  He's not made with my blood.  He doesn't look like me and I can't change that.

---

[4] Although two days of the trial were conducted before a jury, D.W.'s right to a jury trial was struck as a sanction for failing to follow court orders, and the grounds phase was ultimately decided in a trial to the court.  The Honorable Ellen R. Brostrom conducted the trial and disposition of the TPR.  We refer to Judge Brostrom as the circuit court.

[5] Additionally, the court heard from two of the FCMs who managed K.J.'s case earlier in the process and who each testified in the grounds phase of the proceedings.

I think it's really important that while we might be his home and his stability, I think it's really important that he has his biology with him .… Things looked a lot different when this first started and we worked really, really hard, and … try to put our feelings aside and try to do what's best for him. It's our opinion what's best for him is that he keeps them always in his life and she can always be his grandma.

¶6 The circuit court issued an oral decision on the disposition of the TPR petition, ultimately concluding that the TPR was in K.J.'s best interests. The court stated that "at its most fundamental level, this case is about bonding." and the court's decision as driven by K.J.'s "need to not have his primary caretaker bond traumatically severed" by removing him from his foster family, which had cared for him for over four years at the time of disposition.

¶7 The court addressed the statutory factors it considered in making this decision:[6]

---

[6] In considering the best interests of the child in the disposition of a termination of parental rights petition, "the court shall consider but not be limited to the following" factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child.…
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's … placement[s] .…

WIS. STAT. § 48.426.

[K.J.] is likely to be adopted after termination. The [foster parents] are obviously committed to him, and they are fully licensed and have adopted before.

….

[K.J.] is a very adoptable child, and certainly, that would happen in some other form. He is healthy both physically and mentally and emotionally at this time as well as at the time of disposition. He does not have a substantial relationship with his mother or anyone on his mother's side. He is developing a relationship with [D.W.], but I don't know that I could find that it's substantial yet. Arguably, he has a substantial relationship with [S.M.] I don't think it's substantial yet with aunts and cousins, although certainly warm and close and developing, but I don't think it would be harmful to sever those legal relationships because I think that these biological relationships will continue. [K.J.] is too little to express his wishes, but as I have already indicated, I think the traumatic effect of removing him from the [foster family's] home at this time would be potentially overwhelming, so I think if he could express his wishes that he would wish to remain where he is. He has been separated from his parents his entire life, and he will be able to enter into a more stable and permanent family relationship as a result of termination taking into account the conditions of his current placement and any likely future placements. So the statutory factors do strongly mitigate in favor of termination.

¶8    The trial court then ordered the termination of parental rights of D.W. and L.J.  D.W. appeals this order.  Additional facts are included in the opinion.

## DISCUSSION

¶9    D.W. argues that the trial court failed to consider relevant facts when it determined that termination of D.W.'s parental rights was in the best interests of K.J.  He argues this constitutes an erroneous exercise of the trial court's discretion. We conclude that his arguments are unavailing.

¶10    The determination of whether termination of parental rights is in the best interests of a child is governed by the statutory process in WIS. STAT. ch. 48 and the factors under WIS. STAT. § 48.426(3).  The decision to terminate parental rights is within the discretion of the circuit court after the grounds for termination have been proven.  *See **Gerald O. v. Susan R.,*** 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  We will not overturn a circuit court's discretionary decision unless the court erroneously exercised its discretion.  WIS. STAT. § 805.17(2).  A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach.[7]  ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶11    The State argues that the circuit court did not err when it considered the bonding between K.J. and the foster parents in its disposition of the best interests of the child.  The circuit court is allowed to consider any additional factors that relate to the best interest of the child, with the statutory language setting forth that the court shall "not be limited" to the list of factors in the statute.  *See* WIS. STAT. § 48.426(3).  The State contends that the circuit court complied with Wisconsin law and considered on the record each of the six statutory factors as well as the entirety of K.J.'s best interests.  The State argues that D.W.

---

[7] In his reply brief, D.W. objects to the standard of review articulated by the State, which D.W. interprets to mean he would need to show that the circuit court erred when it considered the facts *and* the standard of law *and* in its demonstrated rational decision-making.  We agree it is not D.W.'s burden to show error in all three steps.  However, if our review shows that the circuit court's considerations in all three steps were without error, then its decision is not an erroneous exercise of discretion.

disagrees with the circuit court's ultimate conclusion, but he fails to show an error in the circuit court's considerations.

¶12 D.W. does not dispute that the bond between K.J. and his foster parents was a relevant factor to the disposition of the TPR petition. However, he contends that the trial court failed to examine other relevant facts when it made bonding the primary factor driving the disposition. D.W. argues that the court did not examine facts that demonstrated that K.J.'s bond with his biological family was weaker than his bond with his foster placement because the State did not allow the biological family's bond to grow. He contends that the State failed to meaningfully engage D.W.'s family as placement options.

¶13 Here, the record reflects that D.W.'s family members testified to their love and willingness to care for K.J.; however, their willingness does not undermine that the agency, DMCPS, or the court had already determined they were not suitable placements. S.M. testified that she had requested guardianship of K.J. on multiple occasions. The circuit court addressed on the record that S.M. petitioned for guardianship of K.J. in 2019, but the trial court[8] determined after multiple days of evidentiary hearing that S.M. was "'desperately willing, but not presently fit,'" and the transfer of guardianship was denied. We conclude that the circuit court did not err when it accepted the trial court's decision regarding S.M.'s fitness for guardianship and did not revisit the facts underlying that issue.

¶14 Further, the record reflects that D.W.'s family members were considered for placement of K.J. in 2017 when the initial CHIPS action was filed.

---

[8] The Honorable Christopher R. Foley presided over the guardianship proceedings. We refer to him as the trial court.

The three FCMs who managed K.J.'s case at different times in the proceedings each testified. One of the FCMs testified that D.W.'s sisters had been investigated and denied for the following reasons: (1) S.J. for having municipal warrants relating to "[e]victions, small claims actions, and some domestic violence history"; (2) D.P. for failing to understand DMCPS's safety concerns about L.J., K.J.'s mother, and allowing L.J. to watch D.P.'s child and for having her own driver's license suspended; and (3) A.J. for having a live-in significant other who had a history of domestic violence incidents.

¶15     When D.W.'s sisters were questioned about being denied as K.J's potential caregiver, D.P. testified that after she was denied in 2017, she left a voice mail message for someone in the agency or DMCPS, but did not get a response and did not reach out to anyone else in the intervening years. Additionally, S.J. testified that after she was denied she did not try to do anything to have K.J. placed with her because she did not know she could ask for that. The record reflects that the agency did not seek out additional information from D.W.'s sisters; however, two of the FCMs testified that no information was given to the agency regarding whether any of the sisters' issues had been remedied.[9] Further, one of the FCMs testified that none of D.W.'s sisters requested any further assessment or evaluation as a placement for K.J.

¶16     The guardian *ad litem* asserts that it was reasonable for the circuit court to consider in its analysis that D.W.'s sisters' history and failure to act diminished their relationships with K.J. Further, while S.M. made consistent

---

[9] The record reflects that D.W.'s sisters testimonies showed that some of the agency's concerns may have been remedied after the initial 2017 investigation; however, none of the sisters claimed to have notified the agency about any changes in her situation.

efforts to request placement of K.J., she was found not fit after an evidentiary hearing. We conclude that the circuit court considered the relevant facts related to D.W.'s family members' willingness to care for K.J.; however, that willingness does not overcome the agency and court determinations that they were not suitable placements.

¶17    As to D.W.'s argument that the State's actions resulted in the weaker bonding with the biological family, the record reflects the circuit court considered the roles and actions of individuals and the child welfare system in making this decision. It recognized the "sadness" of this situation and it understood that D.W. "doesn't trust the system"; however, it concluded that, as much as it was "hard,"

> [K.J.] needs permanency and security and a platform from which he can continue to development his budding relationship with [D.W.], continue his relationship with [S.M.] and his aunts and his cousins but from a safe space where he is not overwhelmed, and that safe space is the [foster parents'] home.

Further, regardless of what actions the State may or may not have taken throughout these proceedings, the State's actions do not change that D.W.'s family members were not found to be suitable placements for K.J. and those family members did not remedy the court and agency concerns. Above all, the circuit court considers the best interests of the child in the disposition of a petition for TPR. *See **David S. v Laura S.**,* 179 Wis. 2d 114, 149, 507 N.W.2d 94 (1993). Here, the court considered the importance of stability, permanency, and bonding in the best interests of K.J.'s future after he had already been placed outside of his parents' care for essentially his entire life. We conclude that the circuit court demonstrated reasonable and rational decision making in its analysis of bonding under all of the relevant facts.

9

¶18    Further, D.W. asserts that the circuit court did not examine facts to support D.W.'s specific request at disposition that K.J. be placed with a family member or that the matter be continued as a CHIPS case to allow him to complete programming to prepare him to parent and to allow the bond between K.J. and his biological family to grow.  We disagree.  The records reflects that D.W.'s family members were considered for placement and that K.J. had been placed in out-of-home care for over four years at the time of the disposition, nearly the entirety of his life.  When weighing a petition for TPR, the court considers the "duration of the separation of the parent from the child" and whether the TPR will allow the child to "enter into a more stable and permanent family relationship."  *See* WIS. STAT. § 48.426(3)(e)-(f).  We conclude it was reasonable for the circuit court to determine that more time under a CHIPS order was not in K.J.'s best interests.

¶19    Finally, D.W. contends that the circuit court failed to examine relevant facts demonstrating that familial stability and permanence for K.J. could exist outside of the context of a nuclear, marital family.  D.W. contends that the circuit court summarily concluded that the factor of K.J.'s ability to enter into a more stable and permanent family relationship weighed in favor of the TPR; however, he argues that the court failed to consider that stability and permanence could be achieved through placement in his extended biological family.  D.W. argues the circuit court considered this factor only through the paradigm of the nuclear, marital family, and did not consider cultural traditions of extended kinship care.   Here, the circuit court considered the importance of K.J.'s connection to his extended biological family, but ultimately concluded that severing the legal relationship would not harm K.J. and that the TPR would allow him to enter into more stable and permanent family relationships.  The record reflects that the court considered stability and permanence, but we do not detect an

overarching preference for a nuclear marital family. To the extent that D.W. advocates for an alternative placement structure, there is simply no evidence in the record to support that a viable option was unfairly rejected or not considered by the court. In sum, we conclude that D.W.'s arguments fail to show that the court ignored relevant facts.

## CONCLUSION

¶20 We conclude that the circuit court considered the relevant facts of K.J.'s life under the required statutory factors and demonstrated rational decision making when it determined that terminating D.W.'s parental rights was in K.J's best interests. Therefore, we determine that the circuit court's exercise of discretion was not erroneous.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.