**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 1, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal Nos. | 2024AP859 | Cir. Ct. Nos. | 2021TP71 |
|---|---|---|---|
| | 2024AP860 | | 2021TP72 |
| | 2024AP861 | | 2021TP73 |
| | 2024AP862 | | 2021TP74 |
| | 2024AP863 | | 2021TP75 |

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

APPEAL NO. 2024AP859

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

T.L.,

       RESPONDENT-APPELLANT.

---

APPEAL NO. **2024AP860**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **I.E.L.**, A PERSON UNDER THE AGE OF **18**:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

T.L.,

      RESPONDENT-APPELLANT.

APPEAL NO. **2024AP861**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **A.L.**, A PERSON UNDER THE AGE OF **18**:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

T.L.,

      RESPONDENT-APPELLANT.

2

APPEAL NO. 2024AP862

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

T.L.,

      RESPONDENT-APPELLANT.

APPEAL NO. 2024AP863

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.L.-M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

T.L.,

      RESPONDENT-APPELLANT.

      APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 GEENEN, J.[1] Taylor appeals the termination of her parental rights to Jason, Isaac, Anna, Marvin, and Amanda-Lynn.[2] She argues that there was insufficient evidence for the circuit court to conclude that it was in the best interest of the children to terminate her parental rights. The record reflects that the circuit court, in making its conclusion, considered each of the relevant statutory factors for each child, and its factual findings are supported by the record. Therefore, we affirm.

## BACKGROUND

¶2 Taylor is the mother of Jason (born 9/4/2008), Isaac (born 4/5/2012), Anna (born 9/5/2013), Marvin (born 10/23/2016) and Amanda-Lynn (born 5/23/2018). On December 9, 2019, the Division of Milwaukee Child Protective Services ("DMCPS") received a referral after Anna came to school with a loop mark on her right cheek. Anna initially claimed that she fell down the stairs and that a cat scratched her, but when speaking with the social worker about the incident and later during her forensic interview, Anna instead stated that her aunt had hit her in the face with a belt. On January 6, 2020, DMCPS received a second referral regarding disclosures made by Jason, Isaac, and Anna alleging physical abuse in the home by Taylor. When DMCPS spoke with family and acquaintances about the issues raised in the two referrals, multiple people expressed their own concerns and relayed their observations, including Taylor physically abusing the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading and to protect the confidentiality of these proceedings, we use pseudonyms to refer to all involved parties in this case.

children on multiple occasions, withholding food from the children, and neglecting and improperly caring for the children. Milwaukee Police followed up on the January 2020 referral, which ultimately led to Taylor's arrest. Taylor was charged with three counts of felony child abuse—intentionally causing harm, and the criminal court entered a no-contact order prohibiting Taylor from having contact with Jason, Isaac, and Anna. Due to statements made by Jason and Isaac about not wanting to live with Taylor, the no-contact order, and the concerns about physical abuse and neglect, all five children were taken into temporary physical custody and placed in foster homes.

¶3 All five children were found to be in need of protection or services, and on June 26, 2020, CHIPS[3] dispositional orders were entered in each of the children's cases. On March 26, 2021, the State filed petitions to terminate Taylor's parental rights ("TPR") to all five children, alleging as grounds for termination "continuing CHIPS"—that the children remained in need of protection or services—under WIS. STAT. § 48.415(2), and failure to assume parental responsibility under § 48.415(6).[4] In all of the cases, Taylor entered a no-contest

---

[3] CHIPS is the acronym used "to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette County. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

[4] Termination of parental rights cases consist of two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, which determines whether termination is in the children's best interest. *Sheboygan County DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. If grounds are found by the court, the parent is found "unfit," WIS. STAT. § 48.424(4), and the case moves to the dispositional phase. *Steven V. v. Kelley H.*, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856. If a parent chooses to enter a plea to the grounds alleged for termination, the State must still present evidence to "prove-up" the grounds by clear and convincing evidence. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶3, 246 Wis. 2d 1, 629 N.W.2d 768.

plea to the continuing CHIPS ground, but the circuit court failed to take evidence in support of her plea.[5] *See* WIS. STAT. § 48.422(3). The cases proceeded to the second step of the TPR proceedings, disposition, and the circuit court ordered that Taylor's parental rights to each of the children be terminated on January 3, 2023. Postjudgment, Taylor filed a motion to withdraw her no-contest plea and to vacate the TPR orders based on the circuit court's failure to take evidence in support of grounds. The circuit court denied Taylor's request to withdraw her no-contest plea, but vacated the TPR orders and scheduled a new TPR hearing to take prove-up evidence as to grounds and to address disposition.

¶4    At the hearing on January 30, 2024, the circuit court heard testimony from the children's ongoing case manager regarding their continued need for protective services. At the conclusion of the testimony, the circuit court found that the State had established the continuing CHIPS ground for all five children, found Taylor to be unfit, and proceeded directly to a contested dispositional hearing. During the dispositional hearing, the circuit court heard testimony from the ongoing case manager; the case manager's supervisor; the children's foster parents, Tracy and Michael, who were also the children's adoptive resources; Taylor; and Taylor's friend. After considering the evidence and discussing each of the statutory factors under WIS. STAT. § 48.426(3) as to each of the children, the circuit court terminated Taylor's parental rights to all five children.

¶5    Taylor appeals. Additional relevant facts are discussed below.

---

[5] Prove-up testimony was taken as to grounds for terminating the parental rights of the fathers of the five children, but the circuit court mistakenly believed that prove-up testimony had been taken with respect to the ground of continuing CHIPS for Taylor.

6

## DISCUSSION

¶6      Taylor argues that the circuit court erroneously exercised its discretion when it terminated her parental rights because its dispositional findings are not supported by the record.  Essentially, Taylor argues that the circuit court should have weighed the evidence differently.

¶7      At the dispositional phase of a TPR proceeding, the circuit court decides whether the evidence supports the termination of parental rights and if the termination is in the best interests of the children.  *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768.  The circuit court's analysis is guided by WIS. STAT. § 48.426(1), which provides that "the court shall consider the standard and factors enumerated in this section[,]" and § 48.426(2) sets forth the standard: "The best interests of the child[ren] shall be the prevailing factor considered by the court in determining the disposition" of the children.  Finally, § 48.426(3) requires that, in determining the best interests of the children, the court consider the following factors:

> (a) The likelihood of the child[ren]'s adoption after termination.
>
> (b) The age and health of the child[ren], both at the time of the disposition and, if applicable, at the time the child[ren] [were] removed from the home.
>
> (c) Whether the child[ren] [have] substantial relationships with the parent or other family members, and whether it would be harmful to the child[ren] to sever these relationships.
>
> (d) The wishes of the child[ren].
>
> (e) The duration of the separation of the parent from the child[ren].

7

(f) Whether the child[ren] will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child[ren]'s current placement[s], the likelihood of future placements and the results of prior placements.

*Id.* "[T]he record should reflect adequate consideration of and weight to each factor." *State v. Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶8 The circuit court's decision whether to terminate parental rights is discretionary. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). The circuit court "properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Id.* The circuit court's findings will not be set aside unless "clearly erroneous." *Id.* at 152-53.

¶9 In considering the likelihood of adoption of the children, the circuit court heard testimony from the children's ongoing case manager as well as the two foster parents and adoptive resources for the children: Michael[6] for Anna and Tracy for Jason, Isaac, Marvin, and Amanda-Lynn. In the event that Michael and/or Tracy could not adopt, the ongoing case manager testified that the children were still adoptable. Both Michael and Tracy testified and affirmed their commitment to adopting the children in their care. Michael testified that he had placement of Anna since 2020, and Tracy testified that she had placement of

---

[6] Michael is the maternal uncle to all five children.

Marvin and Amanda-Lynn for four years and Jason and Isaac for two years. Based on this testimony, the circuit court found that the foster parents were committed to adopting the children in their care, that they were committed to meeting the needs of the children, and that the children were otherwise all adoptable.

¶10    The second factor, the ages and health of the children, both at the time of removal and disposition, was also addressed and considered by the circuit court. The ongoing case manager testified that the children were most recently removed from the home in January 2020, also noting that Jason, Isaac, and Anna had previously been removed in 2015 for about eighteen months. From oldest to youngest, the testimony established that the children were approximately ages eleven, seven, six, three, and one at the time of removal. By the time of the second disposition hearing on January 30, 2024, the children had been in out-of-home care for "three plus years." The circuit court referenced these facts in its findings.

¶11    Additionally, the circuit court heard testimony about the health of each child at the time of removal as well as at the time of the disposition hearing. The testimony established that, at removal, Jason had a history of behavioral issues including stealing and lying, and was behind in school with failing grades. He also had dental issues, back issues, PTSD, and other emotional trauma. Jason was treated by—and at the time of the dispositional hearing, continued to receive treatment necessary for his conditions—appropriate doctors, a dentist, a psychiatrist, and a therapist. By the time of the second disposition hearing, Jason had transitioned into a typical fifteen-year-old who did well in school.

9

¶12 Witnesses testified that Isaac also entered out-of-home care needing dental care and medical treatment, and suffering from trauma. After removal, he received treatment from various health care professionals and Tracy testified that, as of the haring date, Isaac was up-to-date on all medical and dental appointments, had no behavioral issues, and was earning a 3.8 GPA in school.

¶13 Testimony established that Marvin needed immunizations and glasses, did not use the toilet independently, and had speech delays at removal. While in out-of-home care, Marvin received therapy and other services for children with suspected developmental delays; he progressed well behaviorally and graduated from therapy, and was doing well in school.

¶14 Evidence at the hearing established that, at removal, Amanda-Lynn was overdue for medical treatment related to a leg or foot condition as well as routine medical care, and she exhibited trauma-related behavior. Witnesses testified that Amanda-Lynn subsequently received therapy, corrective medical treatment for her leg condition, and other interventions and services for developmental matters, and made significant progress behaviorally. By the time of the second dispositional hearing, she was a "typical" five-year-old, who did well in school and continued to see appropriate medical professionals, as necessary.

¶15 Evidence also established that Anna had high needs and behavioral issues at removal. She experienced speech and developmental delays, and had engaged in self-harming behaviors. At disposition, Michael testified that Anna had improved "leaps and bounds" behaviorally and, while struggles existed, had

10

also improved academically with the implementation of an individualized education plan.

¶16    The circuit court appropriately noted the ages of the children as well as the individual health and progress that the children experienced since removal from the home, and found that the second factor weighed in favor of terminating Taylor's parental rights.

¶17    The circuit court thoroughly explored whether the children had substantial relationships with Taylor or other family members, and whether it would be harmful to the children to sever these relationships. The ongoing case manager supervisor testified that there were no substantial relationships between the children and either Taylor or any extended maternal family members. At the time of disposition, none of the children were in contact with Taylor. Other testimony established that Taylor never visited with the three oldest children after their removal, and she was inconsistent with her twice weekly visits with the younger children who were not subject to the no-contact order, often shortening the visits to only twenty minutes or canceling them entirely. The visits had ended altogether a year earlier, after the circuit court made the original TPR findings and order. Multiple witnesses, including Taylor, testified that Taylor was not involved in and knew little about the children's lives—she did not ask about schooling or inquire about the children's medical care.

¶18    Citing the lack of visitation and Taylor's failure to be informed about her children's lives and progress, the circuit court found that there was no substantial relationship between Taylor and the children. It entertained the idea that Taylor might achieve reunification if given an additional year, but ultimately,

it found that an additional year would not make a significant impact on her relationship with the children, noting that the two oldest children "moved on[.]" The circuit court found that the children would not be harmed by severing their legal relationships with Taylor.

¶19  With respect to the children's relationships with maternal family members, Anna was placed with Michael, her maternal uncle, so that relationship continued.  Testimony established that the other four children spoke with their maternal grandmother and their uncle Michael.  The circuit court observed that the children have a relationship with each other, they regularly get together, and four of the siblings live in the same home.  It also observed that the children have a relationship with their maternal grandmother, and that relationship will likely continue through Tracy and Michael.  The circuit court found that the children would not be harmed by severing these legal relationships.

¶20  Testimony on the fourth factor, the wishes of the children, established that each of the children expressed a desire to be adopted by their foster parent.  Tracy testified that the four children placed with her call her "mom" and have all expressed their desire to be adopted by her.  Specifically, Jason told Tracy that he wants to live with her and that he would run away if he returned to Taylor's care.  The ongoing case manager testified that Jason expressed concerns about reunification, and how, if reunification occurred, he would prefer emancipation.  Isaac had stated in the past that he would commit suicide or run away if he ever had to return to Taylor's care.  Tracy also testified that Isaac wrote a letter in support of Tracy adopting him, but the letter was not admitted into evidence.  Marvin and Amanda-Lynn both expressed to Tracy that they want to be

12

adopted by and live with Tracy. Michael testified that Anna views him as a father figure and, depending on her mood, has expressed a desire to live with him forever.

¶21 The circuit court found that Jason, age fifteen, wished to remain with Tracy and did not wish to return to Taylor's care; that Isaac, age eleven, wished to be adopted; that Anna, age ten, wished to be adopted by her maternal uncle, Michael; that Marvin, age seven, wished to be adopted; and that Amanda-Lynn, age five, referred to Tracy as "mother."

¶22 The evidence regarding the fifth factor, the duration of the separation between parent and child, established that the period of separation was substantial. The children were removed from Taylor's home in January 2020 and had never returned. In addition, Jason, Isaac, and Anna were previously removed from Taylor's care for approximately eighteen months in 2015. The circuit court found these facts were uncontested and that the factor weighed in favor of termination.

¶23 On the sixth and final factor, whether the children will be able to enter into a more stable and permanent family relationship as a result of the termination, the testimony established that the children's respective foster parents were committed to adopting and meeting the needs of the children, and that, if the circuit court did not grant the TPR petitions, the children would likely remain in foster care because Taylor's home remained unsafe. As a result, and in light of the length of time that the children had been in their placements, the case manager testified that she believed all five of the children would enter into more stable and permanent family relationships consistent with the each of the children's wishes, if Taylor's parental rights were terminated.

13

¶24    The circuit court found that this factor weighed in favor of termination, finding that the children are placed in adoptive resources, that those adoptive resources are willing and able to meet the ongoing needs of the children, that four of the siblings live with one another and that Anna, though not placed with her siblings, is placed with her maternal uncle. The circuit court additionally found that each of the children would enter more stable and permanent family relationships as a result of termination, emphasizing the need for stability and that the three older children had already been removed from Taylor's home previously.

¶25    After a review of the record and evidence as a whole, we are confident that the circuit court considered the standard and all statutory factors in determining what was in each child's best interest. The circuit court addressed and explained how the record evidence supported its findings with respect to each factor for each child, and determined that granting the TPR petitions was in each child's best interest. Wisconsin law does not "mandate the relative weight" to be placed on any particular factor, but rather that all factors be considered. *Margaret H.*, 234 Wis. 2d 606, ¶29. Here, although Taylor wishes that the circuit court had weighed the evidence differently, the record reflects that the circuit court gave "adequate consideration of and weight to each factor[,]" and its findings are well supported by the evidence. *Id.*, ¶35. The circuit court examined the relevant facts, applied the proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Gerald O.*, 203 Wis. 2d at 152. Accordingly, we affirm.

    *By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.