IN RE the TERMINATION OF PARENTAL RIGHTS OF MICHAEL I.O., a Person Under the Age of 18:
GERALD O., Petitioner-Respondent,

v.

CINDY R., Respondent-Appellant,

STATE of Wisconsin, BY the WASHBURN COUNTY CHILD SUPPORT AGENCY, Co-Appellant.

Court of Appeals

No. 96–0932. Submitted on briefs June 6, 1996.—Decided June 25, 1996.

(Also reported in 551 N.W.2d 855.)

For the respondent-appellant the cause was submitted on the brief of *Eugene D. Harrington* of Spooner.

For Michael I. O. the cause was submitted on the brief of *Robert zumBrunnen* of Spooner.

For the co-appellant the cause was submitted on the brief of *Edwin W. Fischer* of Shell Lake.

For the petitioner-respondent the cause was submitted on the brief of *Paul M. Moldenhauer* of *Paul M. Moldenhauer, S.C.* of Superior.

Before Cane, P.J., LaRocque and Myse, JJ.[1]

MYSE, J.    Cindy R. and the State of Wisconsin, by the Washburn County Child Support Agency, appeal an order granting Gerald O.'s petition to terminate his parental rights to his son, Michael I.O. Cindy and the State contend that the trial court erred by determining that the termination of Gerald's parental rights was in Michael's best interests. Because we conclude that the trial court erroneously exercised its discretion by determining the termination of Gerald's parental rights was in Michael's best interests, we reverse the order.

Michael was born out of wedlock on February 5, 1990. His parents, Cindy and Gerald, lived together for a substantial period of the time from Michael's birth until August 1991. Cindy and Gerald then separated, with Cindy residing in Spooner, Wisconsin, and Gerald residing in Colorado. In May 1992, Gerald was adjudicated the father of Michael and ordered to pay 17% of

---

[1] This opinion is decided by a three-judge panel pursuant to the chief judge's June 20, 1996, order.

his gross income as child support. Gerald's child support obligation was later changed to $381 per month.

Because Gerald had not made any child support payments, Gerald was charged with four counts of criminal nonsupport contrary to § 948.22, STATS. At the end of 1994, Gerald's child support arrearage totaled $16,279. Plea negotiations led to an agreement in which Gerald agreed to terminate his parental rights and pay a lump sum of $20,506 to pay arrears to Cindy and the State in exchange for the district attorney dropping the nonsupport charges. Under the agreement, Cindy would receive approximately $11,500, and the State would receive the remainder of the money for past AFDC payments.

Gerald subsequently petitioned to terminate his parental rights to Michael, and Cindy opposed the petition. At the hearing on the petition, Gerald testified that he had not had any contact with Michael since August 1991, and that it would be in Michael's best interests to terminate his parental rights and receive the lump sum payment because of Gerald's precarious financial position and the possibility that he would go to jail on the nonsupport charges. Gerald further testified that the bank would not loan him $20,000 for the lump sum payment unless his parental rights were terminated.

Gerald, a licensed plumber, earned approximately $33,000 in 1994 and testified that his current take home pay is approximately $620 per week. Gerald made his child support payments from June 1995 to February 1996 and, although he expressed concerns about a future layoff, he testified that he could continue to make his child support payment if everything worked out with his current job. Cindy testified that she did not think it was in Michael's best interests to

terminate Gerald's parental rights because she needs the child support to help provide for Michael. Michael's guardian ad litem also opposed the termination of Gerald's parental rights.

The trial court found that Gerald had abandoned Michael, had paid no child support until June 1995, and had not been any kind of a father to Michael. The trial court concluded that therefore it could not be in the child's best interests to retain Gerald as the father under the facts and circumstances of the case. Accordingly, the trial court granted the petition terminating Gerald's parental rights.

Cindy and the State contend that the termination of parental rights was not in Michael's best interests and therefore the court erred when it granted the petition. The ultimate decision whether to terminate parental rights is discretionary. *In re J.L.W.*, 102 Wis. 2d 118, 131, 306 N.W.2d 46, 52 (1981). To terminate parental rights, the trial court must make a determination that the termination of parental rights is in the child's best interests. *See In re A.B.*, 151 Wis. 2d 312, 320-21, 444 N.W.2d 415, 418 (Ct. App. 1989); § 48.426, STATS. The determination of a child's best interests in a termination proceeding depends on firsthand observation and experience with the persons involved and, therefore, is left to the discretion of the trial court. *In re Brandon S.S.*, 179 Wis. 2d 114, 150, 507 N.W.2d 94, 107 (1993). The trial court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982). The trial

court's findings of fact will not be set aside unless clearly erroneous. Section 805.17(2), STATS.

We note that in other termination of parental rights cases, courts have concluded that the "best interests" analysis "presents a mixed question of law and fact with the precise determination of such criteria as psychological factors being questions of fact." *See A.B.*, 151 Wis. 2d at 321, 444 N.W.2d at 419. Because our result would be the same under either standard, we do not resolve the conflict between the two standards of review.

In making a decision whether to terminate parental rights, the trial court must give paramount consideration to the best interests of the child, which constitutes the prevailing factor. *See* §§ 48.01(2) and 48.426(2), STATS. Section 48.426(3) provides:

> In considering the best interests of the child under this section the court shall consider but not be limited to the following:
>
> (a)  The likelihood of the child's adoption after termination.
>
> (b)  The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c)  Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to sever these relationships.
>
> (d)  The wishes of the child.
>
> (e)  The duration of the separation of the parent from the child.

(f)    Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

The trial court relied on three factors in determining that the termination was in Michael's best interests: (1) Gerald had abandoned Michael and had not been any kind of a father to him; (2) Gerald had not paid any child support until June 1995; and (3) Gerald agreed to pay a lump sum of $20,506 if his parental rights were terminated. We note that this was a voluntary termination of parental rights by the father, who was the only party that felt the termination was in the child's best interests. Cindy, corporation counsel and Michael's guardian ad litem all opposed the termination of Gerald's parental rights.

First, we address the factors of abandonment and failure to pay child support. We conclude that these two factors alone are not sufficient to make a voluntary termination of parental rights in the best interests of the child. If these factors were sufficient, it would give Gerald the ability to terminate his parental rights based on his voluntary course of conduct. Gerald would otherwise have ultimate control over the termination of his parental rights of Michael. While not sufficient alone, the combination of these factors with other factors supporting termination may be sufficient. For example, the termination of parental rights may be in the child's best interests if there was also evidence that Gerald had a negative impact on Michael or that Michael was going to be adopted. In this case, however, there is no evidence, other than the abandonment, that Gerald had any negative impact on or presented any

danger to Michael. Further, Cindy testified that there is no foreseeable stepparent adoption of Michael. "While the vicissitudes of life place many children in one-parent circumstances, it is generally better for children to have two parents." *A.B.*, 151 Wis. 2d at 322, 444 N.W.2d at 419.

Because of the proposed lump sum payment, Michael's financial interest is also a factor to consider in determining whether the termination would be in Michael's best interests. We conclude that the proposed lump sum payment is not in Michael's best interests. Termination removes all obligations of future support, both financial and emotional. While Gerald cannot be compelled to provide Michael with emotional support, the law can effectively compel continued financial support.

Cindy testified that she needs the future child support to help provide for Michael. Gerald earned approximately $27,000 in 1993 and $33,000 in 1994. Gerald also testified that his current take home pay is approximately $620 per week. Further, the record reflects that Gerald made his child support payments from June 1995 up to the hearing in February 1996. Although Gerald expressed concerns about a future layoff and about losing his job if he were put in jail on the criminal charges for nonsupport, Gerald testified that he could continue to make the child support payment if everything worked out with his current job.

Michael is only six years old and if Gerald's child support obligation remains the same, Michael would be entitled to receive over $54,000 in child support over the next twelve years. While Gerald has agreed to pay a lump sum of $20,506, most of that sum is attributable to past child support obligations. In addition, Michael would only receive approximately $11,500 of that

amount. A father should not be permitted to eliminate over $54,000 of needed future support because he agrees to pay past support which he is already legally obligated to pay. Under these facts, the termination of Gerald's parental rights cannot be in Michael's best interests.

To the contrary, the termination of parental rights appears only to be in Gerald's best interests. In fact, the trial court found that Gerald's motivations for voluntarily terminating his parental rights were to avoid prison or probation for the criminal charges and to be able to better support his present family which consists of a wife and two children. The trial court also suggested that another motivation, although not the primary one, may be to escape the responsibility of supporting Michael.

None of the motives as found by the court involve Michael's best interests; they all represent Gerald's desires. As we stated in *A.B.*: "Parental rights may not be terminated merely to advance the parents' convenience and interests, either emotional or financial. . . . Simply put, no parent may blithely walk away from his or her parental responsibilities." *Id.* at 322, 444 N.W.2d at 419. While Michael would presently stand to receive approximately $11,500 if the termination is granted, the long-term financial considerations weigh heavily in favor of denying the petition. Because of the potential future support Michael is entitled to receive over the next twelve years from a parent who is gainfully employed and able to discharge his child support obligation and the lack of any compelling negative impact of Gerald on Michael, we conclude that the termination of Gerald's parental rights is not in Michael's best interests. Michael's best interests are met only if Gerald remains responsible for providing child support

over the next twelve years. Because the termination is not in Michael's best interests, we conclude the trial court erroneously exercised its discretion when it terminated Gerald's parental rights.

We note that there may be situations where a termination of parental rights in exchange for a lump sum payment for child support by a father who has expressed no interest in having a relationship with the child may be in the child's best interests. However, considering the age of the child, the amount of the payment in light of the father's obligations, and the lack of any negative impact of Gerald on Michael, we conclude that the termination is not in Michael's best interests in this case. Because the trial court erroneously exercised its discretion when it terminated Gerald's parental rights, we reverse the order.

*By the Court.*—Order reversed.