BRENNAN, J.[1]
¶ 1 M.G. appeals from a trial court order terminating his parental rights to his daughter, M.W. He argues that the trial court erred in concluding that termination of his parental rights was in the best interest of his daughter because the trial court applied an incorrect legal standard when it stated during the dispositional phase that M.G. did not have a "substantial, parental relationship with [M.W.], and for that reason it would not be harmful to [M.W.] to sever that legal relationship."
¶ 2 Because we conclude that the record shows that the trial court properly considered the relevant facts, applied the proper standard of law, and reached a conclusion that a reasonable court could reach, we affirm. See Bank Mut. v. S.J. Boyer Constr., Inc. , 2010 WI 74, ¶ 20, 326 Wis. 2d 521, 785 N.W.2d 462.
BACKGROUND
¶ 3 On July 18, 2016, the State filed a petition to terminate M.G.'s parental rights to M.W., alleging failure to assume parental responsibility and abandonment. On December 11, 2017, M.G. waived his right to a jury trial on the grounds phase and entered a no-contest plea to the failure to assume parental responsibility allegation. He contested disposition. The dispositional hearing occurred on February 15, 2018.
DISCUSSION
¶ 4 M.G. appeals the trial court's decision at the dispositional phase. He argues on appeal that the trial court erroneously exercised its discretion when it concluded that termination of his parental rights was in M.W.'s best interest. He does not dispute the findings of fact, but rather argues that the trial court applied the incorrect legal standard. M.G. argues that the trial court improperly employed in the dispositional phase the "substantial parental relationship" test-which is the test required for a finding of failure to assume parental responsibility at the grounds phase. See WIS. STAT. § 48.415(6)(a) and (b) (standard for fact-finder is whether parent has "a substantial parental relationship"). He argues that the court failed to apply the correct test for the dispositional phase, the "substantial relationship" test. See WIS. STAT. § 48.426(3) (factors to consider include "[w]hether the child has substantial relationships with the parent or other family members").
Legal Principles
¶ 5 The trial court's decision whether to terminate parental rights is discretionary. Gerald O. v. Cindy R. , 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). Generally speaking, a "[trial] court acts within its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." Bank Mut. , 326 Wis. 2d 521, ¶ 20. When terminating parental rights, the trial court's exercise of discretion requires the court to focus on the child's best interests. WIS. STAT. § 48.426(3). In doing so, the court should consider any relevant evidence, but must consider six statutory factors:
(a) The likelihood of the child's adoption after termination.
(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
(d) The wishes of the child.
(e) The duration of the separation of the parent from the child.
(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.
Id. (emphasis added). See also Sheboygan Cty. DHHS v. Julie A.B. , 2002 WI 95, ¶¶ 28-29, 255 Wis. 2d 170, 648 N.W.2d 402.
¶ 6 The focus of this appeal involves the third factor. "Substantial relationship" includes "the child's emotional and psychological connections to the child's birth family." State v. Margaret H. , 2000 WI 42, ¶ 19, 234 Wis. 2d 606, 610 N.W.2d 475. See also WIS. STAT. § 48.426(3)(c).
The trial court's application of the legal standards to the facts.
¶ 7 At the dispositional hearing, the trial court heard testimony from M.G.; the case manager; and M.W.'s maternal grandmother, who is also M.W.'s foster parent.
¶ 8 Following the testimony, the court noted that it had also considered the court report and other documents contained in the files including the permanency planning reviews. It then proceeded to address the statutory factors. It found that the likelihood of adoption was "high," and that the child's age and health, including a disability for which she was receiving appropriate services, "weigh[ed] in favor of termination of parental rights." The court found that the "wishes of the child" was a "neutral" factor given the fact that M.W. was just over three years old and was too young to express her wishes as to termination. The court found that the duration of separation was "significant," in that she had been in out-of-home placement for two and a half years, and that this factor weighed in favor of termination. The trial court found that M.W. would "enter into a more stable and permanent family relationship as a result of the termination of parental rights," citing the fact that M.G. was unlikely to be in a position to provide a stable and permanent family for M.W. within a reasonable time during her childhood. M.G. does not challenge the trial court's findings as to these factors.
¶ 9 Rather, M.G. challenges the trial court's finding as to the third factor-whether the child had substantial relationships with the parent or other family members and whether the child would suffer any harm from severing them. See WIS. STAT. § 48.426(3)(c).
¶ 10 The evidence showed that M.G. had never lived with M.W. or been responsible for her daily care. M.G. was incarcerated for the first four months of M.W.'s life. After three months out of custody, he was again incarcerated for the next year and a half. During that period, he sent approximately seven letters and cards to M.W. or her caregivers. The case manager testified that upon his release from custody, she made referrals for individual therapy, a psychological evaluation, an AODA assessment, and a parenting class. M.G. participated in none of them. He attended twelve of the twenty-four visits scheduled with M.W. He then was arrested again within six months of his release, and has continued to be in custody, which will last until 2022. When he was asked why he had not written or sent M.W. more than one card during his most recent incarceration, M.G. answered that he did not have the funds to do so.
¶ 11 In addressing the third factor, the trial court said it would consider "whether [M.W.] has a substantial relationship with her parents or with other extended family members and whether it would be harmful to her to sever those legal relationships." (Emphasis added.) "As for [M.G.], I find it at this time that [M.W.] does not have a substantial relationship with [M.G.], and I want to speak to that a little bit more because it's very clear to me that [M.G.] cares about [M.W.] a great deal and loves [M.W.]" (Emphasis added.) The court then spoke about how M.G. had shown respect for the maternal grandmother who had been M.W.'s primary caretaker for all of her life and how he "has done what he's able to do to support that stability and support that relationship." The court next stated that M.W. "[did] not have a substantial relationship with other extended paternal family members." (Emphasis added.) At one point, however, the court commented that M.G.'s incarceration and inability to "turn things around" when released from custody had prevented him from being "available to establish a substantial, parental relationship with [M.W.]" (Emphasis added.)
¶ 12 M.G. disregards the trial court's repeated use of the phrase "substantial relationship" in its application of WIS. STAT. § 48.426 and instead seizes on the trial court's use of the word "parental" in that single comment. M.G.'s argument is that the statute requires the trial court to consider whether M.G. had a "substantial relationship" with M.W., and not a "substantial parental relationship" with M.W. He argues that it is possible to have a "substantial relationship" that is not a "substantial parental relationship," and that contrary to the trial court's finding, the evidence showed that he did have a "substantial relationship" with M.W.
¶ 13 We conclude that based on the record, the trial court did properly apply the "substantial relationship" standard. M.G.'s argument is merely a focus on one word in the transcript, taken out of context. The trial court stated the legal standard three times precisely as it is stated in the statute. The grounds phase determination, which M.G. had not disputed, was that M.G. had failed to assume parental responsibility-in other words, that M.G. had not established a substantial parental relationship. The trial court said the word "parental relationship" instead of "relationship" one time in the course of its discussion-after the trial court had precisely stated its findings that M.W. did not have a substantial relationship with the parent or other family members, stating the correct legal standard. That does not mean that the trial court altered the dispositional phase analysis or applied the wrong standard.
¶ 14 The trial court "examine[d] the relevant facts, applie[d] a proper standard of law, and, using a demonstrated rational process, reache[d] a conclusion that a reasonable judge could reach." See Bank Mut. , 326 Wis. 2d 521, ¶ 20. For the reasons stated above, the court's decision is not an erroneous exercise of discretion, and we affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)(4).

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.