COURT OF APPEALS
DECISION
DATED AND FILED

May 1, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP176**

**STATE OF WISCONSIN**

Cir. Ct. No. 2024TP20

**IN COURT OF APPEALS
DISTRICT III**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J. G., A PERSON UNDER THE AGE OF 18:

BROWN COUNTY HEALTH AND HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

J. L.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Julie appeals an order terminating her parental rights to her daughter, Jamie.[2] Julie contends that the circuit court erroneously exercised its discretion when it concluded that termination of her parental rights (TPR) was in Jamie's best interests by failing to properly consider whether Jamie had a substantial relationship with Julie and whether Jamie had a substantial relationship with her biological siblings, both as required by WIS. STAT. § 48.426(3)(c). We reject this argument and affirm the court's order.

## BACKGROUND

¶2 In June 2024, Brown County Health and Human Services (the County) filed a petition to terminate Julie's parental rights to Jamie, alleging that Julie abandoned Jamie under WIS. STAT. § 48.415(1)(a)2. and (1)(a)3. The County moved for partial summary judgment as to the grounds phase of the TPR proceedings, which Julie opposed.[3] After a motion hearing, the circuit court found that grounds existed for TPR due to abandonment and that Julie was unfit. *See* WIS. STAT. § 48.424(4). Julie does not challenge that ruling on appeal.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading in this confidential matter, we refer to the appellant using a pseudonym rather than her initials, and we do the same for the child.

[3] A contested TPR proceeding involves a two-step procedure. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The first step is a factfinding hearing, in which a jury or circuit court determines "whether any grounds for the termination of parental rights have been" proved. *Id.*, ¶26 (quoting WIS. STAT. § 48.424(3)). The termination proceedings then move to the second step, a dispositional hearing, at which the circuit court must consider the best interests of the child in determining whether to terminate the parent's rights. WIS. STAT. §§ 48.426(2), 48.427.

¶3     At the dispositional hearing, Jamie's ongoing case manager, Amanda Rooyakkers, testified that she became Jamie's case worker in May 2024. Rooyakkers stated that Jamie was placed into foster care on October 9, 2023, when she was discharged from the hospital shortly after her birth. Jamie has been placed with the same foster family since October 13, 2023. The foster family told Rooyakkers that they plan to adopt Jamie, and Rooyakkers testified that the foster family was "actively working" with Lutheran Social Services (LSS) to adopt Jamie.[4]

¶4     Rooyakkers also testified that Jamie was nearly two years old as of the date of the hearing, she was a healthy child, she had not had any significant health concerns while the court had been involved with her life, and Jamie's foster parents were making sure that her medical needs were being met.

¶5     Rooyakkers opined that Jamie's father did not have a substantial relationship with Jamie because he had never met Jamie and "indicated no desire to do so."[5]   Rooyakkers also opined that Jamie did not have a substantial relationship with Julie. Rooyakkers noted that Julie "did not have any contact with [Jamie] for approximately her first year of life" and that "[Julie] saw [Jamie] a few times after birth, and then there was a period of time of no contact until approximately October of 2024 when she started doing some visitation." According to Rooyakkers, she believed "that those visitations have gone well," but she concluded that there was not "a substantial parent/child bond" and that Julie

---

[4] LSS wrote a letter stating that Jamie is an adoptable child. This letter was received into evidence without objection at the dispositional hearing.

[5] The parental rights of Jamie's father are not at issue in this appeal. We discuss Jamie's father only to the extent necessary to decide Julie's appeal.

does not make any everyday decisions for Jamie. Rooyakkers also noted that Jamie had "some contact" with two of her biological siblings and their adoptive families but that she did not have contact with any other extended or biological family members.[6] Rooyakkers opined that terminating Julie's parental rights would not be harmful to Jamie due to the lack of a substantial relationship between Jamie and either of her parents.

¶6 Rooyakkers then testified that she had not discussed this case with Jamie due to her young age, but she was able to observe Jamie's relationship with her foster parents. Rooyakkers stated that Jamie had "an observable bond" with her foster parents and that Jamie "looks to [her] foster parents for attention, for affection, to get her needs met," and when scared or upset. Jamie identifies her foster parents as "Mom and Dad." Rooyakkers prepared a report for the hearing that was entered into evidence without objection.

¶7 Julie testified about the struggles she went through during her life, including obtaining housing after an extended period of homelessness, maintaining her sobriety, and the steps she has taken to cooperate with the County's services. Julie also discussed her visits with Jamie, stated that Jamie appears to enjoy those visits, and stated that Jamie calls her "Mom." Julie testified that she "would like a chance to be [Jamie's] mother." Julie also offered explanations for her failures to communicate with the County's case workers regarding Jamie.

---

[6] Rooyakkers testified that Jamie has five biological siblings. As of the dispositional hearing, Julie's parental rights of three of Jamie's biological siblings had been terminated, and those siblings had been adopted. One of Jamie's remaining siblings had aged out of foster care, and the other sibling resided with that sibling's father.

Julie testified that Jamie had met two of the siblings who were adopted but she did not believe Jamie had met her other siblings.

¶8     Applying WIS. STAT. § 48.426(3), the circuit court found that Jamie was adoptable and that the likelihood of her adoption was "great" and "significant" due to her foster family being "ready, willing, and able to adopt her." The court also found that Jamie was a month shy of turning two years old and that she was healthy at the time of removal and continued to be healthy. Regarding whether Jamie has substantial relationships with family members and whether it would be harmful to sever those relationships, the court made the following findings:

> There's not a substantial relationship…. And although [Julie has] a limited amount of time that [she's] spent with [Jamie] and [she's] developing a relationship of kinds, it's not a parental/child relationship at this point. Not what I would consider a substantial relationship, and therefore, given that it's not a substantial relationship, I find that it would not be harmful to [Jamie] to sever that relationship.
>
> …. Siblings, that's interesting because legally it sounds like … [t]here could be a relationship with [the oldest sibling] that [Julie] could even be involved in, but there isn't…. That wasn't developed well enough for me to know what kind of a relationship. There's certainly visitation with two other biological siblings, but they're no longer legally [Julie's] children. So I don't really think, under the law, I'm supposed to consider them siblings in looking at whether or not it's harmful to sever the relationship because they're not technically siblings. And then I think … only one of the others is adopted. There's no relationship….
>
> …. I don't know … how to really define them. Biological siblings but no longer legal siblings. But there is no real[] way for me to talk about severing those relationships or whether there [are] relationships with them because they're not technically legally siblings anymore, as odd as that is. So I don't find that there are any substantial relationships with family members that would be harmful to be severed at this time.

¶9     The circuit court also found that Jamie was too young to express her own wishes but that "the observations of the bond that she has [with her foster

parents] tell us a lot."[7]  The court noted that Julie and Jamie have been separated since Jamie's birth and that Jamie has remained in foster care ever since, which the court stated was "the crux of why there's not a substantial relationship."  The court found that termination of Julie's parental rights would "[o]bviously" provide Jamie with "a much more permanent situation."  Accordingly, the court concluded that it was in Jamie's best interests to terminate Julie's parental rights, and it entered a TPR order.  Julie now appeals.

## DISCUSSION

¶10    Julie argues that the circuit court erroneously exercised its discretion during the dispositional phase of the TPR proceedings by failing to consider whether Jamie has a substantial relationship with Julie and with Jamie's biological siblings, as required by WIS. STAT. § 48.426(3)(c).

¶11    We review a circuit court's ultimate determination in a TPR proceeding for an erroneous exercise of discretion.  *See State v. Margaret H.*, 2000 WI 42, ¶32, 234 Wis. 2d 606, 610 N.W.2d 475.  A court "properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach."  *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).

¶12    At the dispositional phase of the TPR process, "'the best interests of the child' shall be the prevailing factor."  *State v. B.W.*, 2024 WI 28, ¶7, 412

---

[7]  The circuit court did not specify whose observations of the bond between Jamie and the foster parents it found telling, but we can reasonably infer it was referencing the case worker's observations.

Wis. 2d 364, 8 N.W.3d 22 (citation omitted). In determining the child's best interests, the circuit court must consider, but is not limited to, the following factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶13 On appeal, Julie contends only that the circuit court erred with respect to its consideration of the factor in WIS. STAT. § 48.426(3)(c). In particular, she argues that the court erroneously exercised its discretion by applying an improper standard of law by assessing whether Julie had a substantial *parental* relationship with Jamie, as opposed to any type of substantial relationship with her. In support thereof, Julie cites ***Waukesha County DHHS v. A.T.***, No. 2025AP167, unpublished slip op., ¶10 (WI App Apr. 2, 2025).[8] In that case,

---

[8] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

we noted that "substantial relationships" is not defined by § 48.426(3) but that WIS. STAT. § 48.415(6)(b) defines "substantial parental relationship," which we concluded was "instructive in assessing what a substantial relationship looks like."[9] *A.T.*, No. 2025AP167, ¶10. Julie contends that this statement demonstrates that the "substantial relationship" standard in § 48.426(3)(c) is distinct from the "substantial parental relationship" standard in § 48.415(6)(b).

¶14 We conclude that Julie's argument is only partially correct and, ultimately, is unpersuasive. As Julie herself notes, this court stated that the definition of "substantial parental relationship" in WIS. STAT. § 48.415(6)(b) *was* instructive for determining whether the mother in *A.T.* had a substantial relationship with the child. *See A.T.*, No. 2025AP167, ¶10. Thus, while there may be differing standards, the two standards appear to be interrelated when assessing whether a child has a substantial relationship with his or her parent under WIS. STAT. § 48.426(3)(c).

¶15 Regardless, and more important for purposes of the facts in this case, while the circuit court found there was a relationship between Julie and Jamie but it was not a parent/child relationship, the court further found that Julie did not have *any substantial* relationship with Jamie due to the length of the separation between them. Thus, even if Julie were correct that the court was required to consider more than whether she had a substantial parental relationship with Jamie, the court did so. And the court clearly—and reasonably—exercised its discretion

---

[9] WISCONSIN STAT. § 48.415(6)(b) applies to the grounds portion of a TPR proceeding, specifically when the ground of failure to assume parental responsibility is alleged. This paragraph defines "substantial parental relationship" as "the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." *Id.*

to determine that severing the limited relationship Julie had with Jamie during the first two years of Jamie's life would not be harmful to Jamie. *Cf.* ***State v. Y.P.V.***, Nos. 2022AP1935 and 2022AP1936, unpublished slip op., ¶¶12, 29 (WI App Mar. 21, 2023) (holding that the circuit court failed to adequately consider the effect of severing the birth mother's relationship with her children, whom the mother had raised until they were eight and nine years old, respectively). Further, we note that WIS. STAT. § 48.426(3) does not prohibit a circuit court from considering factors other than those enumerated in that subsection.

¶16    Julie also argues that the County presented insufficient evidence for the circuit court to conclude that her relationship with Jamie was not substantial because the County did not discuss the nature or quality of Julie's visits with Jamie. Julie does not point to any legal authority stating that the court must be presented with information regarding the nature or quality of a parent's visits with his or her child to determine if that parent has a substantial relationship with the child.[10] *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App.

---

[10] Julie does cite ***David S. v. Laura S.***, 179 Wis. 2d 114, 147, 507 N.W.2d 94 (1993), in support of her contention that "[t]o determine what course of action is in the child's best interests a circuit court must understand, among other factors, the nature of the child's substantial relationships with family members."

We do not find Julie's argument persuasive insofar as ***David S.*** is highly distinguishable from this case. ***David S.*** concerned the circuit court's denial of the child's grandparents' motion to intervene as parties in TPR and adoptive placement proceedings. *Id.* at 122, 133. Our supreme court concluded that the circuit court "erroneously exercised its discretion in deciding [the child's] best interests without giving the grandparents an opportunity to be heard" because,

> [t]o determine what course of action is in the child's best interests a circuit court must understand, among other factors, the nature of the child's substantial relationships with family members. Unless the circuit court is willing to listen to people who have formed such relationships with the child, it cannot make a reasoned determination of the child's best interests.

(continued)

1992) (stating that we need not address undeveloped arguments or arguments unsupported by references to legal authority). There is no such requirement in WIS. STAT. § 48.426(3). Further, the court's finding in this regard is supported by the undisputed evidence that Julie failed to visit Jaime for the first year of Jaime's life, and the limited number of her subsequent visits with Jaime, particularly given Jamie's young age.

¶17 Next, Julie separately argues that the circuit court erroneously exercised its discretion by failing to assess whether Jamie had a substantial relationship with the two biological siblings Jamie had met. Julie acknowledges that her parental rights to those siblings have already been terminated, but she argues that this fact is "of no consequence" because WIS. STAT. § 48.426(3)(c) requires the court to consider the child's connections with the child's birth family. *See Margaret H.*, 234 Wis. 2d 606, ¶19 ("[T]he substantial relationships referenced in … § 48.426(3)(c) include the child's emotional and psychological connections to the child's birth family.").

¶18 This argument, too, is unpersuasive. In *Margaret H.*, our supreme court concluded that WIS. STAT. § 48.426(3)(c) "directs focus on the *legal severance* resulting from a termination of parental rights and requires courts to assess the harmful effect of this *legal severance* on the emotional and

---

*Id.* at 147-48.

Thus, *David S.* does not support Julie's argument that the circuit court must be presented with information regarding the nature or quality of a parent's visits with his or her child to determine if that parent has a substantial relationship with the child. Further, unlike the court in *David S.*, the court here heard testimony from Julie about her relationship with Jamie. The court then weighed that evidence and found that Julie's relationship with Jamie was not a substantial one due to the fact that Julie and Jamie have been "separated since [Jamie's] birth."

psychological attachments the child has formed with his or her birth family." *Margaret H.*, 234 Wis. 2d 606, ¶26 (emphasis added). Because Julie's parental rights to Jamie's two siblings had already been terminated and these siblings had been adopted by another family prior to the dispositional hearing, Jamie's and Julie's relationships with these two siblings had already been legally severed. *See id.*, ¶20 ("[A]doption severs the legal rights, connections, and duties between the birth family and the child. The termination of parental rights, which generally precedes an adoption, likewise yields the same outcome." (footnote omitted, citation omitted)). Thus, terminating Julie's parental rights to Jamie did not result in the legal severance of Jamie's relationships with these siblings—that had already happened.

¶19 Furthermore, and more importantly, Julie's argument that the circuit court was required to consider how TPR "affect[s] the broader relationships that exist between the child and the child's birth family" is immaterial under the facts of this case. Julie does not point to any facts indicating that the termination of her parental rights to Jamie will affect Jamie's relationships with those siblings. Indeed, Rooyakkers testified that Jamie's contact with her biological siblings was arranged by Jamie's foster parents and the siblings' adoptive parents. For obvious reasons, Julie has nothing to do with those contacts, including either their scheduling or context. Further, Julie does not point to any legal authority stating that, under WIS. STAT. § 48.426(3)(c), a circuit court must consider a child's relationship with biological siblings when those siblings have already been legally severed from the birth/biological family.

¶20 Thus, the circuit court did not erroneously exercise its discretion—i.e., by failing to apply a proper standard of law—by not assessing whether Jamie has substantial relationships with two of her siblings. While the court's focus was

more on the basic fact of the "legal severance" of Julie's rights to Jaime's two siblings, their adoption means that Julie has no legal or factual basis for her claimed error. Accordingly, the court did not erroneously exercise its discretion when it found that TPR was in Jamie's best interests, even considering its impact on Jamie's relationships with "other [biological] family members." *See* WIS. § 48.426(3)(c).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

12