COURT OF APPEALS
DECISION
DATED AND FILED

**May 7, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2026AP400
2026AP401
2026AP402**

Cir. Ct. Nos. 2024TP2
2024TP3
2024TP4

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

NO. 2026AP400

IN RE THE TERMINATION OF PARENTAL RIGHTS TO O.J.,
A PERSON UNDER THE AGE OF 18:

MARQUETTE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

B.L.J.,

RESPONDENT-APPELLANT.

---

NO. 2026AP401

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.J.,
A PERSON UNDER THE AGE OF 18:

MARQUETTE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

**V.**

**B.L.J.,**

    **RESPONDENT-APPELLANT.**

---

**NO. 2026AP402**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO P.J.,
A PERSON UNDER THE AGE OF 18:**

**MARQUETTE COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**B.L.J.,**

    **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Marquette County: CHAD A. HENDEE, Judge. *Affirmed.*

¶1    BLANCHARD, J.[1]  B.L.J. appeals orders terminating her parental rights to three of her children. She argues that the circuit court erroneously exercised its discretion in deciding that the termination of her parental rights was in the children's best interests. Because I conclude that the circuit court's remarks

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

These appeals were consolidated for briefing and disposition by an order of this court dated March 17, 2026. *See* WIS. STAT. RULE 809.10(3).

bearing on the determinations of each child's best interests demonstrate valid exercises of the court's discretion, I affirm.

## BACKGROUND

¶2 The children who are the subjects of these proceedings are the youngest three of the six children B.L.J. and her husband, J.J., had together. In 2021, Marquette County initially removed all six children from the home that the family shared with B.L.J.'s mother. The removals were prompted by concerns that the children were neglected and that the home was in a state of uncleanliness that rendered it dangerous. The children were eventually returned to the home under an order finding them to be children in need of protection and services ("CHIPS"). However, approximately two years later, the youngest three children were again removed from the home. In July 2024, the County filed petitions to terminate B.L.J.'s and J.J.'s rights to these three children, alleging grounds of continuing CHIPS and failure to assume parental responsibility.

¶3 On the day of the scheduled factfinding hearing on grounds, the parties informed the circuit court that B.L.J. and J.J. would plead no contest to the continuing CHIPS ground. The court accepted the pleas, heard evidence to satisfy it that the CHIPS ground was proved, and set the case for a disposition hearing.

¶4 At the disposition hearing, both parents testified, as did a social worker employed by the County and two experts: one expert called by the County and the other by the parents. The circuit court explained its decision to terminate B.L.J.'s and J.J.'s parental rights to the three children at a subsequent hearing. B.L.J. and J.J. appealed separately; this appeal concerns only B.L.J.'s parental rights to each of the three children.

**DISCUSSION**

¶5    In Wisconsin, there is a "two-part statutory procedure" for an involuntary termination of parental rights (TPR).  ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  In the first phase, which is the factfinding or "grounds" phase, the petitioner (here, the County) must prove the existence of "one or more of the statutorily enumerated grounds for termination of parental rights" by clear and convincing evidence.  ***Id.***; WIS. STAT. § 48.31(1).  If such grounds are found to exist, the circuit court then proceeds to the second phase, the "dispositional" phase, in which the court decides whether it is in the best interests of the child or children that the parent's rights be terminated.  ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).  Here, the court accepted B.L.J.'s admission that statutory grounds existed, and B.L.J. does not argue that any errors occurred during the grounds phase.  Her argument focuses solely on the court's decision in the dispositional phase.

¶6    In deciding what is in the best interests of the child in a TPR case, the circuit court's discretion is guided by WIS. STAT. § 48.426(3)(a)-(f), which provides a nonexclusive list of six factors that the court "shall consider."  ***State v. B.W.***, 2024 WI 28, ¶7, 412 Wis. 2d 364, 8 N.W.3d 22 (citation omitted).  This court reviews a circuit court's decision on disposition for an erroneous exercise of discretion.  ***Gerald O. v. Cindy R.***, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  An appellate court "will sustain a discretionary decision as long as the circuit court examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach."  ***Gahl v. Aurora Health Care, Inc.***, 2023 WI 35, ¶18, 413 Wis. 2d 418, 989 N.W.2d 561.

4

¶7      I start with a clarification.  For the most part, although with some exceptions noted below, both sides on appeal treat the three children as a unit and do not address facts individual to each child.  It was of course necessary for the circuit court to exercise its discretion regarding each of the three terminations of B.L.J.'s parental rights.  But it is also true that many relevant facts here would appear to apply in a similar manner to each of the three siblings and B.L.J.'s relationships with each of them.  And, B.L.J. does not argue that the court, in exercising its discretion, was not sufficiently alert to the risk that evidence relating to a determination regarding termination of B.L.J.'s rights to one child might not apply with equal weight, or might not apply at all, to the determination of her rights to another child.

¶8      With that clarification, I turn to the nature of B.L.J.'s argument.  She does not dispute that the circuit court expressly addressed each of the six factors in the nonexclusive list that it was required to consider.  Her argument is that the court erroneously exercised its discretion in concluding that termination of her parental rights was in the children's best interests because "certain facts introduced before the circuit court led to only one conclusion that a reasonable judge could make: that termination was not in the best interests of the children."  In support, B.L.J. calls out particular pieces of evidence that, when considered together but without other evidence, could have supported a reasonable conclusion against termination of each of child.  But this argument misses the mark under the applicable standard of review. *See id.*  As I explain in more detail below, the evidence was not so one-sided in her favor that no reasonable judge could find that termination was in the children's best interest.  As the County points out, there was significant evidence pointing in the opposite direction.

5

¶9 B.L.J. structures her arguments around the six statutory factors, and I address them in a similar manner. The statutory factors are:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

## I. Likelihood of adoption after termination

¶10 B.L.J. acknowledges that two of the three children had been placed with a "solid, adoptive resource" and that the likelihood of their adoption was therefore high. However, a previously identified potential adopter of the third child had recently developed health issues and become unable to adopt the child. The County had identified a different adoptive resource for this child three weeks before the disposition hearing, and had begun the process of introducing that child to the couple, who were licensed foster parents. For these reasons, while B.L.J. is correct that this child's prospects for adoption were less established than those of the other two, the circuit court had a reasonable basis to conclude that, as the court put it,

"there was still a high likelihood" the child would be adopted if B.L.J.'s parental rights were terminated.

## II. Age and health of the children

¶11  The three children were aged 5, 6, and 9 years old at the time of the hearing. B.L.J. argues that, because they were older than the infants or toddlers who are sometimes the subject of TPR proceedings, they were less likely to be adopted. She also points out that, because the children had spent a number of years with their parents and siblings, they had stronger emotional bonds with their birth family than if they were younger.

¶12  While a child's age may influence adoptive prospects, the circuit court reasonably considered this concern in its decision, as noted above. Regarding family bonds, as will be discussed below, there was substantial and conflicting evidence introduced at the hearing, and the circuit court also gave reasonable consideration to this matter. Further, B.L.J. fails to acknowledge that there was evidence that the children had not received appropriate medical care while in B.L.J.'s and J.J.'s custody, and that the health of each child improved notably after they were removed from the home. The court noted this in its decision, saying the children "were in a very unhealthy state" at the time of their removal and that they "all appear to be thriving now." The court's consideration of this factor was reasonable.

## III. Substantial child-family relationships, and whether their severance would harm each child

¶13  This factor was a principal focus at the disposition hearing. B.L.J. and J.J. presented testimony and a report from an expert witness, a psychologist, who

had observed interactions between the parents and the six children during a visit. The psychologist opined that "unequivocally, there is a strong, positive, emotional attachment or bond between the parents and the three children." In support of this conclusion, the psychologist described the visit at length, reporting many positive interactions among family members. She also expressed the view that severing these relationships would have "a lot of negative, long-term consequences" including distress, trauma, and negative effects on the children's "emotional functioning, their social functioning, their mental well-being." Her report concluded that it was in the children's best interests that B.L.J. and J.J.'s parental rights not be terminated, and advocated against this outcome "[i]n the strongest possible terms."

¶14 As with the previous factor, on appeal B.L.J. highlights this evidence without acknowledging the evidence given by a second expert, called by the County, who disagreed with the conclusions of B.L.J.'s expert. B.L.J. also does not contend with the testimony of the social worker, who described the single visit observed by the psychologist called as a witness by B.L.J. as an unusually positive set of interactions among family members, compared with what typically occurred during such visits.

¶15 In explaining its decision, the circuit court said that this factor "was extremely difficult" to resolve "because the testimony was mixed." The court "recognize[d] that there is clearly a bond that would affect these children if severed," which the court did "not take … lightly." It noted that B.L.J.'s expert, "while very highly qualified, also appeared extremely passionate" in her general view that a court-ordered termination of parental rights is almost never appropriate. Once again, while B.L.J. makes a case that a court could reasonably have come to a

8

different conclusion on the substantial relationships issue, she does not make a case that the court's conclusions were not one reasonable conclusion.

## IV.  The wishes of the children

¶16    B.L.J. points out that the expert she called testified that two of the three children "expressed definitive wishes to return to their biological family" and that, according to a social worker, the third child also stated the same desire. However, the social worker testified that she had spoken with the children and "they do and they don't want to go home, so it is a little bit of both for them.  They are very confused."  The circuit court observed that the children were "at ages that they are, obviously, old enough to know but also young enough to be most likely wishing to make people happy, as well."  In light of the testimony, the court reached a reasonable conclusion that the court "could not make a strong finding either way" regarding what the children wanted to have happen.

## V.  The duration of separation

¶17    B.L.J. does not make an argument on this factor.  The circuit court observed that the children had been out of B.L.J.'s home for nearly two years, and that visitation during much of that time had been limited to one or two hours per month.

## VI.  Whether termination will lead to a more stable and permanent family relationship for each child

¶18    Another significant issue at the termination hearing was evidence bearing on possible changes in the parents' circumstances since the children had been removed from their home.  B.L.J. and J.J. presented evidence that J.J. had been receiving treatment for depression.  The argument was that this had enabled him to

contribute to the physical maintenance of the home, limiting or avoiding the degree of disarray that had been one basis for the children's removal.  B.L.J. had also obtained steady work, and the family had been able to move into a larger home, which they did not share with others.

¶19    B.L.J. is correct that there was undisputed evidence that she and J.J. had made significant, positive changes to the family's living conditions.  But in explaining its decision, the circuit court expressly gave B.L.J. credit for this evidence, noting that the parents had obtained, paid rent for, and maintained a home "significantly different than the home that the children were taken out of."

¶20    At the same time, the circuit court also noted the lack of a consistent history.  That is, the court observed that the parents had, in the past, presented the appearance of a sufficiently safe and stable environment that the children were returned to them, only to then return to a state in which the children had to be once again removed.  The court's concern that similar regressions in various relevant areas could recur was a concern for which support can be found in the record, even if there was also evidence that could have been weighed to mitigate that concern.

## CONCLUSION

¶21    Because B.L.J. fails to show that the circuit court's decisions to terminate B.L.J.'s parental rights to each child were not valid exercises of its discretion, I affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.