COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP794**

Cir. Ct. No. 2024TP10

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.J.T.,
A PERSON UNDER THE AGE OF 18:

WAUPACA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

C.J.T.,

RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge. *Reversed and cause remanded*.

¶1 BLANCHARD, J.[1] C.J.T. appeals a circuit court order terminating his parental rights to his son, J.J.T. C.J.T. points out that the court, in explaining its decision that termination of C.J.T.'s rights was in J.J.T.'s best interests, did not demonstrate that it considered all six of the nonexclusive factors that courts are required by statute to consider. Specifically, the court made no reference to the third factor, contained in WIS. STAT. § 48.426(3)(c): "Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." Further, C.J.T. accurately contends that the record does not support a conclusion that the court considered this substantial-relationships factor in reaching its decision. For these reasons, I conclude that the termination of parental rights (TPR) order must be reversed and the case remanded so that the circuit court can demonstrate an exercise of its discretion consistent with the statute.

## BACKGROUND

¶2 J.J.T. was born in November 2020. In June 2022, J.J.T. was adjudicated a child in need of protection and services, and was placed with C.J.T.'s sister. After 18 months in this placement, J.J.T. was moved into a foster home with potential adoptive parents. The County petitioned to terminate the parental rights of both C.J.T. and of the child's mother, T.K., in July 2024. T.K. voluntarily consented to the termination of her parental rights. The circuit court granted summary judgment against C.J.T. on the ground of abandonment in March 2025, and C.J.T.'s case moved to the disposition phase.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

¶3     At the disposition hearing, a County social worker testified.  She described the history of J.J.T.'s placements and his prospects for adoption.  She noted that, for much of J.J.T.'s life, both C.J.T. and T.K. were incarcerated, and she opined that J.J.T. had not formed "substantial relationships" with either parent.  In contrast, the social worker testified, J.J.T.'s relationships with members of his potential adoptive family were strong and positive.

¶4     C.J.T., who remained incarcerated at the time of the hearing, was also a witness.  He testified that he did not believe that he had a relationship with J.J.T.  When asked whether the termination of his own parental rights would harm J.J.T., C.J.T. testified that it would, "[l]ater down the line," and spoke of his own experience growing up "without a mom and a dad."  C.J.T. testified that he is Native American, and he said that he wanted J.J.T. to understand this heritage.  He also testified that he hoped that the couple who had raised him would be able to have a relationship with J.J.T., whom he described as their "grandbaby."  On cross examination, C.J.T. testified that he thought it was in J.J.T.'s best interests for him to be adopted by his foster parents.  C.J.T.'s counsel said that counsel understood C.J.T. to have "a pretty healthy understanding of what's going on today and what's in the best interest of his child."  Counsel also said that C.J.T.'s position was that the TPR petition should be dismissed.

¶5     The circuit court, in explaining its decision, began by saying that it believed that termination of C.J.T.'s parental rights was in J.J.T.'s best interests. The court then explicitly referenced five out of the six statutorily mandated factors:

- **First factor**.  The court said, "I take into account the likelihood that [J.J.T.] will be adopted after termination." *See* WIS. STAT. § 48.426(3)(a).

- **Second factor**. The court discussed J.J.T.'s age, both at the time of the hearing and when he was placed outside of his birth home. *See* § 48.426(3)(b).

- **Fourth factor**. The court said that it did not believe that J.J.T., given his very young age, could express wishes that the court could consider. *See* § 48.426(3)(d).

- **Fifth factor**. The court noted the lengthy separation of J.J.T. from his birth parents. *See* § 48.426(3)(e).

- **Sixth factor**. The court concluded that J.J.T. would be able to enter into a more stable and permanent family relationship if C.J.T.'s parental rights were terminated. *See* § 48.426(3)(f).

¶6 A close review of the transcript reveals that the circuit court made no reference of any kind to the substantial-relationships factor in WIS. STAT. § 48.426(3)(c). As noted, this factor asks "Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships."

¶7 To clarify a significant aspect of the record, it appears that the circuit court inadvertently omitted to mention this factor, given that the court moved through the other five factors in the order in which they appear in the statute, skipping the third without explanation and without circling back to it. Further, none of the court's relatively brief remarks can reasonably be construed as taking into account the relationships, or lack of relationships, between J.J.T. and J.J.T.'s birth family.

¶8 The circuit court entered orders terminating both parents' rights to J.J.T., and C.J.T. appeals.

**DISCUSSION**

¶9      In Wisconsin, there is a "two-part statutory procedure" for an involuntary termination of parental rights. *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first phase, which is the factfinding or "grounds" phase, the petitioner (here, the County) must prove the existence of "one or more of the statutorily enumerated grounds for termination of parental rights" by clear and convincing evidence. *Id.*; WIS. STAT. § 48.31(1). As noted, in this case this phase was resolved by a grant of summary judgment, and C.J.T. does not challenge any aspect of the grounds phase on appeal.

¶10     When, as here, grounds are found to exist, the circuit court then proceeds to the second phase, the "dispositional" phase, in which the court decides whether it is in the best interests of the child that the parent's rights be terminated. *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2). In deciding what is in the best interests of the child in a TPR case, the circuit court's discretion is guided by § 48.426(3)(a)-(f), which provides a nonexclusive list of six factors that the court "shall consider." *State v. B.W.*, 2024 WI 28, ¶7, 412 Wis. 2d 364, 8 N.W.3d 22. This court reviews a circuit court's decision on disposition for an erroneous exercise of discretion. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). An appellate court "will sustain a discretionary decision as long as the circuit court examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Gahl v. Aurora Health Care, Inc.*, 2023 WI 35, ¶18, 413 Wis. 2d 418, 989 N.W.2d 561.

¶11     C.J.T.'s argument on appeal is straightforward. WISCONSIN STAT. § 48.426(3) directs that a circuit court determining disposition "shall consider" all

six listed factors, and the record here does not reveal any consideration of one of the six. C.J.T. posits that this demonstrates a failure to "appl[y] a proper standard of law," and therefore an erroneous exercise of discretion. *See Gahl*, 413 Wis. 2d 418, ¶18. C.J.T. further argues that the remedy for this error is to vacate the order terminating his parental rights and remand to the circuit court for a new disposition hearing.

¶12 The County concedes that the circuit court did not specifically refer to the substantial-relationships factor. Its argument rests on the following as evidence that could support a conclusion that J.J.T. had no substantial relationships with either his birth parents or other members of his birth family and that no harm would come to J.J.T. by the severance of non-substantial relationships: C.J.T.'s and the social worker's testimony at the disposition hearing; and a report filed by the same social worker pursuant to WIS. STAT. § 48.425. Based on this evidence, the County appears to offer two arguments in the alternative: that the circuit court implicitly relied on this evidence; or, even if not, that affirmance is appropriate because this court can determine from this evidence that it does not matter whether the circuit court implicitly relied on it.

¶13 In the first alternative argument, the County suggests that this evidence renders the circuit court's decision a proper exercise of discretion, despite the court's failure to allude in any way to the substantial-relationships factor. In support, the County relies on *Waushara County DHS v. V.L.*, No. 2016AP23, unpublished slip op. (WI App Feb. 25, 2016), in which this court determined that the circuit court demonstrated a valid exercise of discretion despite the fact that the court had not "explicitly recite[d] each of the WIS. STAT. § 48.426(3) factors by name or number." *V.L.*, No. 2016AP23, ¶8. This court noted that a circuit court is "not required to use any 'magic words' in rendering its

decision," and concluded that the circuit court had sufficiently alluded to and explained its thinking as to each factor, and that its conclusions were supported by evidence in the record. *Id.*, ¶¶8-13. The County here is wrong in suggesting that *V.L.* stands for the proposition that a TPR disposition decision can be affirmed as a valid exercise of discretion when, as here, the record reflects no court consideration of a mandatory factor. Instead, *V.L.* indicates that an appellate court should consider the circuit court's remarks during the disposition stage in the context of the evidence presented, and that an appellate court should not require a formal recitation of the mandatory factors. The issue here is not that the court failed to use "magic words," nor that the court's language regarding the substantial birth-family relationships factor was imprecise. Rather, the court said nothing at all reflecting consideration of this factor.

¶14    The County's second alternative argument is that, even if the record does not reflect a valid exercise of the circuit court's discretion, based on this evidence this court should nevertheless sustain the termination of C.J.T.'s parental rights. Citing **State v. Margaret H.**, 2000 WI 42, ¶37, 234 Wis. 2d 606, 610 N.W.2d 475, the County notes that an appellate court "faced with inadequate findings" may, among other options, "review the record anew and affirm if a preponderance of evidence clearly supports the judgment." However, the County does not note that, immediately after describing this potential course of action, our supreme court in **Margaret H.** stated that it preferred "remanding to the circuit court when confronted with inadequate findings, particularly in family law or domestic relations actions." *Id.*, ¶38.

¶15    Further, as C.J.T. points out, there is sparse evidence about J.J.T.'s relationships with other members of C.J.T.'s family. The social worker's report notes that J.J.T. "has relationships with his mother, his maternal grandmother,

maternal half-sister, and paternal aunt." And, to recap, J.J.T. lived with this "paternal aunt"—C.J.T.'s sister—for the first 18 months of his out-of-home placement. The social worker's report opines that severing these relationships would not be harmful to J.J.T., though the report seems to suggest that the relationships would not in fact be severed, because J.J.T.'s potential adoptive parents were inclined to enable the relationships going forward.

¶16 Depending on how the circuit court might have assessed the credibility and weight of this evidence, and to the extent that the court actually considered the substantial-relationships factor, this evidence could have reasonably contributed to the court's consideration of the issue. But appellate courts reviewing discretionary decisions should not in the first instance draw their own contestable inferences from record evidence. Instead, the task of the appellate court is to discern "whether the circuit court properly considered [a] factor in exercising its discretion." *See* **State v. A.P.**, Nos. 2022AP95-97, unpublished slip op., ¶10 (WI App Apr. 26, 2022). Having determined that the record does not demonstrate that the circuit court "properly considered" the substantial-relationships factor, I conclude that this court is not well positioned to determine whether "a preponderance of evidence clearly supports the judgment." *See* **Margaret H.**, 234 Wis. 2d 606, ¶37. "The determination of a child's best interests in a termination proceeding depends on firsthand observation and experience with the persons involved and, therefore, is left to the discretion of the [circuit] court." **Gerald O.**, 203 Wis. 2d at 152.

¶17 For all of these reasons, this court will follow the "expressed … preference" for remand in this family law case. *See* **Margaret H.**, 234 Wis. 2d 606, ¶38. The order terminating C.J.T.'s parental rights is reversed, and the case is remanded to the circuit court for a new disposition hearing at which the court can

8

consider each statutory factor, as well as any other relevant matters.  I emphasize that I do not mean to express in this opinion any views regarding the merits of the best-interests determination that now returns to the circuit court.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.